2015 IL App (1st) 150419
No. 1-15-0419
Opinion filed September 30, 2015

FIFTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JAGODA TRZOP, JESSICA TRZOP, BRIAN TRZOP and MARIA BARBAR HOROSZKO, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 2014 CH 05454 |
| ANNA M. HUDSON, Individually and Successor Trustee of the Halicki Family Trust, | ) ) ) | The Honorable Rodolfo Garcia, Judge, presiding. |
| Defendant-Appellee | ) ) | |
| (Zygmunt Halicki, | ) ) | |
| Intervenor-Appellee). | ) | |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Palmer concurred in the judgment and opinion.

**OPINION**

¶ 1    On September 28, 2007, intervenor Zygmunt Halicki (Zygmunt) and his now-deceased wife Jadwiga signed a trust declaration with themselves as grantors and primary beneficiaries and with 11 successor beneficiaries, including the four plaintiffs.   On February 6, 2014, while residing with defendant Anna M. Hudson, Zygmunt, who was 92 years old and the sole surviving grantor, reduced the number of successor beneficiaries to two, namely,  defendant Hudson and Marian Zalicki, who are Zygmunt's daughter and son, respectively.  Plaintiffs, who were now eliminated from the trust, sued defendant Hudson; and the trial court ruled that plaintiffs lacked standing to challenge the validity of the amendment and dismissed their suit.  For the following reasons, we reverse and remand.

¶ 2                                BACKGROUND

¶ 3                          I. Declaration of Trust

¶ 4    On September 28, 2007, intervenor Zygmunt and his wife signed a document entitled "Declaration of Trust."  The declaration named Zygmunt and Jadwiga as both the trustors and the trustees, and named the trust the "Halicki Family Trust."  The declaration stated that if Zygmunt or his wife ceased to act, the other shall act alone.  If both Zygmunt and his wife ceased to act, then Anna Hudson was appointed as successor trustee.  Marian Halicki was appointed as successor trustee, if Anna Hudson ceased to act.

2

¶ 5    The declaration named Zygmunt and his wife as the initial beneficiaries: and they placed in the trust a "single family house at 602 Council Trail, Mount Prospect, Illinois."   The declaration stated that Zygmunt and his wife had four children now living:   Marian Halicki, plaintiff Jagoda Trzop, plaintiff Maria Barbara Horoszko, and defendant Anna Hudson.

¶ 6    After the death of both Zygmunt and his wife, the declaration provided that the trustees shall distribute the trust as follows to:

(1) defendant Anna Hudson, their daughter, the entire real property at 602 East Council Trail;

(2) Marian Hadlicki, their son, $25,000;

(3) Jadwiga Halicki, their daughter-in-law, $15,000;

(4) Paul Halicki, their grandson, $20,000;

(5) Michael Halicki, their grandson, $15,000;

(6) Matthew Halicki, their grandson, $15,000;

(7) plaintiff Jadgoda Trzop, their daughter, $20,000;

(8) plaintiff Brian Trzop, their grandson, $20,000;

(9) plaintiff Jessica Trzop, their granddaughter, $10,000;

(10) Maximillian Emil Hudson, their grandson, $20,000;

(11) plaintiff Maria Barbara Horoszko, $2,000 (whom the declaration states "has already received three real properties in Poland, four cars, and a lot of money which [Zygmunt and his wife] sent to Poland"); and

(12) Marek Frackiewicz, $5,000.

Thus, the total distribution to the four plaintiffs in the initial declaration was $52,000.

¶ 7 The declaration described the trustors' powers, including the power to amend. The document provides their power to amend, in full as:

"3.1 POWER TO AMEND: During the joint lifetime of the trustors, this trust may be amended in whole or in part by an instrument in writing, signed by both trustors, and delivered to the trustees. After the death of the first trustor to die, the surviving trustor may amend the trust, in whole or in part, by an instrument in writing, signed and delivered to the trustees. After both of the trustors cease to act as the trustee, no amendment may alter the trustees' duties or discretion without the trustees' written consent."

¶ 8 The declaration also contained the following "no contest clause," which provides in full:

"NO CONTEST CLAUSE: If any beneficiary, other than a trustor, shall in any manner, directly or indirectly, attempt to cancel or oppose the

4

validity of this agreement, including any amendments thereto, or commences or prosecutes any legal proceedings to set aside this agreement, then in such event such beneficiary shall forfeit his or her share, cause to have any right or interest in the trust property, and shall be deemed to have predeceased the trustors."[1]

¶ 9 The declaration was signed by both Zygmunt and his wife, as both trustors and trusetees, and it states that they both "read the foregoing declaration of trust" and that it "correctly states the terms and conditions under which the trust estate is to be held, managed and distributed by the trustees."

¶ 10 II. Amendment

¶ 11 On February 6, 2014, Zygmunt signed a document entitled "Amendment and Restatement of the Halicki Family Trust." The amendment stated that his wife had died and that he was now the sole trustor and the sole trustee.

¶ 12 The amendment stated that it eliminated the prior beneficiary paragraph and substituted instead the following:

"Upon the death of the survivor of [Zygmunt and his wife], the trustee(s) shall distribute the entire HALICKI FAMILY TRUST equally to my daughter, ANNA HUDSON, and my son MARION HALICKI."

---

[1]Neither the parties nor the intervenor raise an argument on appeal concerning the no-contest clause.

The original declaration spelled the son's name as "Marian," whereas the amendment spells it as "Marion." In this opinion, we will use the original "Marian."

¶ 13 Even to the untrained eye, the signature of Zygmunt on the 2014 amendment appears shaky, as compared to his signature on the 2007 declaration. After his signature on the 2014 document appears the following paragraph:

> "The Sole Trustor and Sole Trustee, [Zygmunt], signed this AMENDMENT AND RESTATEMENT OF THE HALICKI FAMILY TRUST, in our presence on the date it bears. Immediately thereafter and in his presence and in the presence of each other, and in the presence of the Notary Public, we signed our names as witnesses. We certify that we believe [Zygmunt] understood what and why he was signing the document and to be of sound mind and memory at the time of the signing."

¶ 14 This paragraph is followed by the signatures and addresses of three witnesses: Marc Johnson, Mary T. Mueller and Lukas Stasiczak. The document states that it was prepared by attorney Richard N. Mueller, and it does not indicate whether he is related to witness Mary T. Mueller who shares the same last name. The amendment does not indicate whether the witnesses

are employed by or related to the preparing attorney, who was also the notary public who notarized the document.

¶ 15                                    III. The Complaint

¶ 16         On March 31, 2014, a little over a month after the amendment was signed, plaintiffs filed a complaint which alleged the following:

¶ 17         Plaintiffs are the children of Zygmut and his wife Jadwiga, who died on August 16, 2013. Zygmunt is 92 years old and in poor health. He is believed to be seriously ill and has been losing weight rapidly. He cannot be alone and cannot care for himself. Since December 2013, he has resided with defendant Hudson, upon whom he is totally dependent for his daily needs and medical care.

¶ 18         The principal and sole asset of the trust at this time is believed to be the real property on East Council Trail in Mount Prospect, Illinois, since Hudson has dissipated all the cash assets after their mother's death. Hudson hired an attorney, who had a long-standing relationship with Hudson but no prior relationship with the Halicki family, to draft an trust amendment for Zygmunt to sign which bequeathed all the trust's assets to her and another relative.

¶ 19         Zygmunt fears displeasing defendant Hudson, who has isolated him from the rest of the family, despite plaintiff Jagoda Trzop's offer to share his care. Zygmunt was not advised by Hudson's personal attorney to seek independent

counsel. Hudson is the designated agent under durable powers of attorney for property and health care for Zygmunt and, as a fiduciary, owed the highest standard of care.

¶ 20    The complaint alleged counts of (I) undue influence, (II) tortious interference with inheritance expectancy, (III) fiduciary fraud, and (IV) declaration of constructive trust.   Plaintiffs asked for a declaration that the amendment is void, for damages and attorney fees, and for the appointment of a successor trustee other than Hudson.

¶ 21                              IV. Hudson's Answer

¶ 22    On May 7, 2014, defendant Hudson filed her answer in which she asserted that Zygmunt was mentally competent.  She agreed with plaintiffs that the sole asset left in the trust was the Council Trail property and that Mueller, who drew up the amendment, was "her attorney."  The answer further alleged that her attorney "sensed that a Trust Contest may result from [Zygmunt's] decision to disinherit two of his children and several of his grandchildren.  A Polish interpreter was hired and the complete trust execution was videotaped to preserve [Zygmunt's] peace of mind and voluntary action at the time of the Trust Amendment execution. Three witnesses (although not required by law) were present at the execution of the Amendment and each attested that they believed that [Zygmunt] understood what and why he was signing the

documents and that he was of sound mind and memory at the time of the signing."

¶ 23                              V. Discovery and Motions

¶ 24        Defendant Hudson moved promptly to proceed with discovery, filing a motion on the same day as her answer for court approval to take an evidence deposition of Zygmunt.

¶ 25        On May 12, 2004, five days after the filing of defendant's answer, plaintiffs moved to disqualify Richard Mueller as attorney for defendant Hudson.  Mueller had prepared and notarized the trust amendment which was the subject of the complaint.  In support of their motion, plaintiffs submitted the affidavit of their attorney, E. William Mahoney, Jr., who swore that "[m]ore than a decade ago, [h]e personally recommended" attorney Mueller to defendant Hudson to represent Hudson on a matrimonial matter which Mueller undertook. Mahoney also swore that Zygmunt "does not read English and speaks very little English. He requires a Polish interpreter for communications. Hudson speaks Polish and English fluently." On May 29, 2014, the trial court granted the motion to disqualify.

¶ 26        On June 10, 2014, plaintiffs filed their first notice to produce documents on defendant Hudson.  In an undated order, the trial court ordered the taking of

Zygmunt's deposition on or before June 30, 2014, and ordered defendant to respond to plaintiff's first notice to produce on or before June 19, 2015.

¶ 27    On June 26, 2014, plaintiffs filed their second notice to produce on defendant Hudson.  On July 10, 2014, defendant Hudson filed a notice of completeness that the documents that she produced were all the documents responsive to plaintiffs' first and second notices to produce.

¶ 28    On July 10, 2014, plaintiffs filed a motion for a visitation order allowing plaintiffs to visit Zygmunt.  The motion claimed that defendant Hudson had made visitation impossible since the beginning of the suit.  Plaintiffs also filed a motion to revoke and terminate defendant Hudson's powers of attorney, and a petition for rule to show cause as to why Hudson should not be held in contempt for failing to produce all responsive documents.

¶ 29    On July 10, 2014, the trial court granted Zygmunt leave to file a petition to intervene by July 17, 2014.  On July 17, Zygmunt filed the petition to intervene and attached to his petition a motion for summary judgment on all counts of plaintiffs' complaint against defendant Hudson.  Zygmunt asserted a number of grounds, including that plaintiffs lacked standing.

¶ 30    On July 15, 2014, plaintiffs filed responses to defendant's first notice to produce and, on July 21, 2014, plaintiffs filed a notice of subpoenas for

testimony on attorneys Richard Mueller, who prepared the trust amendment at issue, and Maria J. Kaczmarczyk.[2]

¶ 31    On August 7, 2014, the trial court granted Zygmunt's petition to intervene. The trial court also gave defendant and intervenor Zygmunt 28 days, or until September 4, 2014, to respond to plaintiffs' petition to revoke defendant Hudson's powers of attorney, and gave plaintiff 28 days, or until October 3, 2014, to reply.

¶ 32                    VI. Intervenor's Motion for Summary Judgment

¶ 33    On August 12, 2014, intervenor Zygmunt again filed a motion for summary judgment on all counts against defendant Hudson; and, on the same day, plaintiffs filed notices to take the depositions of both Zygmunt and defendant Hudson and a third notice to produce to Hudson. The trial court entered an order setting a briefing schedule on Zygmunt's summary judgment motion, with plaintiffs given until October 16, 2014, to respond and defendant and intervenor Zygmunt given until October 30, 2014, to reply. Plaintiffs were also permitted to take the depositions of intervenor Zygmunt and attorney Richard Mueller, and all other depositions were "denied" until further order of the court.

---

[2]Zygmunt later stated at his deposition that attorney Maria Kaczmarczyk had prepared the original trust declaration in 2007.

¶ 34	On September 3, 2014, plaintiffs moved for entry of an order allowing plaintiffs to have a professional mental and physical evaluation of intervenor Zygmunt pursuant to Illinois Supreme Court Rule 215 (eff. Mar. 28, 2011).[3]

¶ 35	VII. Intervenor's Motion to Dismiss

¶ 36	Although there was a pending motion for summary judgment with a set briefing schedule, on September 8, 2014, Zygmunt filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2014)).[4]

¶ 37	Pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)), Zygmunt argued that plaintiffs' complaint was insufficient to state a cause of action because they failed to allege a vested legal right, interest or expectancy in the Halicki Family Trust, where the sole primary beneficiary of the trust is still alive and may consume the trust during his lifetime.

---

[3] Illinois Supreme Court Rule 215 provides in relevant part: "In any action in which the physical or mental condition of a party or of a person in the party's custody or legal control is in controversy, the court, upon notice and on motion made within a reasonable time before the trial, may order such party to submit to a physical or mental examination by a licensed professional in a discipline related to the physical or mental condition which is involved." Ill. S. Ct. R. 215(a) (eff. Mar. 28, 2011).

[4] Section 2-619.1 permitted the filing of a combined motion, allowing the filing of a motion seeking relief under both sections 2-615 and 2-619 (735 ILCS 5/2-615, 2-619 (West 2014), such as the intervenor filed. 735 ILCS 5/2-619.1 (West 2014).

¶ 38     Pursuant to section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2014)), Zygmunt argued that, without a vested interest in the trust, plaintiffs lack standing and cited in support the 2009 case of *In re Estate of Henry*, 396 Ill. App. 3d 88 (2009).

¶ 39     On September 24, 2014, plaintiffs moved to stay the briefing of the summary judgment motion to allow the taking of two additional depositions, namely, attorney Maria Kaczmarczk and defendant Hudson.  Defendant Hudson filed a response opposing the request for a stay.

¶ 40                          VIII. Zygmunt's Deposition

¶ 41     On September 30, 2014, plaintiffs took the discovery deposition of intervenor Zygmunt who answered through an interpreter.  Zygmunt stated that he resided with his daughter, defendant Hudson, but he did not know the street number or phone number of the house. He also stated that he had six grandchildren when he had eight.  In preparing for the deposition, he met with his attorney and defendant Hudson "sometimes" acted as a translator for them. After being handed a document to read, Zygmunt replied that he had difficulty seeing and that he "need[ed] someone to read documents to [him] because [he] won't be able to see anything."  When asked if he relied on defendant Hudson to read documents to him, he replied:  "Yes. She can help me. Nobody else can."

He relied on her to read documents to him instead of using glasses or a magnifier.

¶ 42      Zygmunt stated that Maria Kaczmarczyk was the attorney who prepared the original 2007 trust document.  He explained that, when his wife was alive, she was "more competent" in financial matters and he relied on his wife to direct the attorney who prepared the trust. All communications among himself, his wife and the attorney were in Polish. Zygmunt stated:  "The two daughters, they were afraid of my wife because my wife was tough and decided–and now they are doing whatever they want with me."  When the questioner stated, "[a]nd after you did the trust amendment you disallowed any future gift or bequest to 10 of those 12 people" or beneficiaries, Zygmunt responded:  "10 people? What happened to them?"

¶ 43      When asked why he changed the trust, Zygmunt stated that his assets would no longer cover "the amounts that were supposed to go to my grandchildren," because the value of his home had gone down.  When asked whether he understood that his house had value, he replied that he did not know how long his daughter would take care of him, and that he might need the money for his own care.  He then stated:  "The older daughters want to take everything right away, and what about me, am I supposed to end up under a bridge like a bum?"  When asked who told him that his daughters were trying to

14

take money from him, Zygmunt replied: "Well, they filed a cause against me. I know myself. What kind of question is this?" Zygmunt stated that he changed his will to make defendant Hudson and his son Marian his sole beneficiaries because Hudson had been taking care of him while the other daughters had done nothing, and his son Marian in Texas was always good to him and his wife.

¶ 44　　Zygmunt stated that he never met with attorney Mueller who prepared the amendment. He told Hudson that he wanted to make the change and she recommended the attorney and paid for him. Zygmunt did recall meeting with Mueller to sign the amendment. Zygmunt uses a wheelchair outside the home, and a walker in the home, and he does not leave the house unaccompanied.

¶ 45　　　　　　IX. Plaintiffs' Response to Intervenor's Motion to Dismiss

¶ 46　　On October 1, 2014, the trial court ordered plaintiffs to withdraw their motion to terminate defendant Hudson's powers of attorney, and the court set a briefing schedule on intervenor Zygmunt's combined motion to dismiss. It also vacated the October 16, 2014, due date for plaintiffs' brief in response to intervenor Zygmunt's summary judgment motion. Lastly, it stated that plaintiffs' motion for a Rule 215 examination of Zygmunt was "entered and continued generally."

¶ 47   In their response to the combined motion to dismiss, plaintiffs raised several procedural issues before arguing the merits. First, plaintiffs argued that defendant Hudson had waived these issues as a matter of law, and that intervenor Zygmunt should not be allowed to raise them on her behalf now. Plaintiffs argued that, by filing an answer without asserting affirmative defenses or a section 2-619 motion to dismiss, defendant Hudson had waived the issue of standing.

¶ 48   Second, plaintiffs argued that intervenor Zygmunt lacked standing to dismiss the complaint's counts which were tort counts directed against defendant Hudson.

¶ 49   Third, plaintiffs argued that the intervenor's section 2-619.1 motion was untimely because it was filed after he filed the still-pending summary judgment motion. By filing the summary judgment motion, he waived the section 2-619.1 issues.

¶ 50   On the merits, plaintiffs cited *In re Estate of Michalak*, 404 Ill. App. 3d 75 (2010), a case from this court subsequent to the 2009 *Henry* case which specifically distinguished *Henry*. *Michalak*, 404 Ill. App. 3d at 83-84 (distinguishing *Henry*, 396 Ill. App. 3d at 97-98).

¶ 51   On November 18, 2014, the trial court set the combined section 2-619.1 motion for argument on December 22, 2014, and "[a]ll other motions were

continued generally." That included plaintiffs' motion for a Rule 215 examination of Zygmunt. The order also stated: "All parties shall be prepared to discuss Chase v. Wemple[,] 396 Ill. App. 3d 88." That is a reference to *In re Estate of Henry*, 396 Ill. App. 3d 88 (2009). The full name of the case is *In re Estate of Henry* (JP Morgan Chase Bank N.A. v. Wemple).

¶ 52                                X. First Order to Dismiss

¶ 53        On December 30, 2014, the trial court issued a written order which stated in full:

> "This cause having come to be heard on Zygmunt Halicki's motions to dismiss, all parties present and the court having been advised in the premises, it is hereby ordered:
>
> 1. The case is dismissed on all counts with prejudice
>
> 2. This order shall not be considered the final order in this cause. Plaintiffs shall have until January 15th to draft this final order. Proposed drafts shall be delivered to the court electronically by Jan. 13th. This matter is continued to January 15 at 10:00 a.m."

¶ 54                              XI. Second Order to Dismiss

¶ 55        On January 15, 2015, the trial court issued a final and written order dismissing the complaint, which stated in full:

"This cause coming to be heard upon Intervenor Zygmunt Halicki's Combined Motions to Dismiss pursuant to 735 ILCS 5/2-615 and 735 ILCS 5/2-619 (supplemented by the deposition transcript and Halicki's affidavit), the issues fully briefed by the parties, arguments of counsel fully heard, and the Court fully advised in the premises, the Court finds:

1. On September 28, 2007, Intervenor Zygmunt Halicki and his wife, Jadwiga Halicki, since deceased, executed a trust known as the Halicki Family Trust, in which the husband and wife were co-trustees and only beneficiaries, with the co-trustees retaining their right to amend and revoke the trust; upon the death of Jadwiga Halicki, Intervenor Z. Halicki became the sole trustee and beneficiary of the trust, retaining the right to amend or revoke the trust;

2. On February 6, 2014, trustee Halicki executed his right to amend the Halicki Family Trust, while remaining its sole beneficiary;

3. The Plaintiffs are not beneficiaries under the amended Halicki Family Trust;

4. The Plaintiffs have demonstrated no justiciable interest to support their complaint challenging the amended Trust; the Plaintiffs lack standing as a matter of law; *In re Estate of Richard V. Henry*, 396 Ill. App. 3d 88 (2009) is controlling and dispositive to the issue of standing,

while recognizing that no preclusive effect arises from the dismissal of the complaint for lack of standing; *Estate of Richard V. Henry*, 396 Ill. App. 3d at 99 (with no standing to challenge the disposition of property by the surviving trustee and sole beneficiary, 'there is no danger *** that [the plaintiffs] will be collaterally estopped in their efforts to pursue their remedies under *** an action contesting the trust')[5];

IT IS HEREBY ORDERED:

A. The Plaintiffs' Complaint to set aside the February 6, 2014, amendment to the Halicki Family Trust for tortious interference with an expectancy, fiduciary fraud, declaration of constructive trust, injunction and other relief is dismissed with prejudice as to all counts for lack of standing.

B. This is a final and appealable order."

¶ 56    In sum, the trial court ruled that, since plaintiffs are not named as beneficiaries in the amendment, they lack standing to challenge its validity.

---

[5]The *Henry* court held that "the legatees must wait until after the death of the testator before they can challenge the testatory's disposition of his property. Consequently, since we hold that *** appellants have no standing to pursue this appeal, there is no danger here that they will be collaterally estopped" later. *Henry*, 396 Ill. App. 3d at 99.

¶ 57                              XII. Notice of Appeal

¶ 58        The "Notice of Appeal" is file-stamped February 4, 2015, and states that plaintiffs seek "reversal of the court orders entered by the [trial court] on December 30, 2014, and January 15, 2015, and seek remand to the Circuit Court for further proceedings." This appeal follows.

¶ 59                                  ANALYSIS

¶ 60        On this appeal, plaintiffs ask this court to reverse the trial court's orders holding that they lack standing and remand to the trial court for further proceedings. For the following reasons, we reverse and remand.

¶ 61                            I. Section 2-619 Dismissal

¶ 62        Although the trial court did not specify whether it was granting the dismissal motion pursuant to section 2-615 or section 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2014)), the trial court dismissed solely based on a lack of standing. The intervenor had moved concerning lack of standing pursuant to section 2-619 and, as we discuss in more detail below, Illinois courts have repeatedly held that a lack of standing is the proper subject of a section 2-619 motion. *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999); see also *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 33 ("plaintiff's lack of standing is a proper affirmative matter pursuant to section 2-619(a)(9)"); *River Plaza Homeonwer's Ass'n v. Healey*,

389 Ill. App. 3d 268, 276 (2009); *Poulet v. H.F.O., L.L.C.*, 353 Ill. App. 3d 82, 89-90 (2004). "Because lack of standing is an affirmative defense, it must be raised in a motion to dismiss brought pursuant to section 2-619(a)(9) of the Code, and not in a section 2-615 motion." *Clarke v. Community Unit School District 303*, 2012 IL App (2d) 110705, ¶ 36.

¶ 63     "A motion to dismiss, pursuant to section 2-619 of the Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006); *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). For a section 2-619 dismissal, our standard of review is *de novo*. *Solaia Technology*, 221 Ill. 2d at 579. *De novo* review means that we will perform the same analysis a trial court would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). "Under the *de novo* standard of review, this court owes no deference to the trial court." *People v. Williams*, 2013 IL App (1st) 111116, ¶ 75 (citing *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154 (2007)). In ruling on a section 2-619 motion to dismiss, the court must interpret the pleadings and supporting materials in the light most favorable to the nonmoving party. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003).

¶ 64    For a motion to be properly brought under section 2-619, the motion (1) must be filed "within the time for pleading," and (2) must concern one of nine listed grounds.  735 ILCS 5/2-619(a) (West 2014).

¶ 65    A section 2-619 motion is permitted only on one of the following grounds:

"(1) That the court does not have jurisdiction of the subject matter of the action, provided the defect cannot be removed by a transfer of the case to a court having jurisdiction.

(2) That the plaintiff does not have legal capacity to sue or that the defendant does not have legal capacity to be sued.

(3) That there is another action pending between the same parties for the same cause.

(4) That the cause of action is barred by a prior judgment.

(5) That the action was not commenced within the time limited by law.

(6) That the claim set forth in the plaintiff's pleading has been released, satisfied of record, or discharged in bankruptcy.

(7) That the claim asserted is unenforceable under the provisions of the Statute of Frauds.

(8) That the claim asserted against defendant is unenforceable because of his or her minority or other disability.

(9) That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a) (West 2014).

Illinois courts have repeatedly held that a lack of standing qualifies under the ninth listed ground: an "affirmative matter avoiding the legal effect of or defeating the claim" (735 ILCS 5/2-619(a)(9) (West 2014)). *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999); see also *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 33 ("plaintiff's lack of standing is a proper affirmative matter pursuant to section 2-619(a)(9)"); *River Plaza Homeowner's Ass'n v. Healey*, 389 Ill. App. 3d 268, 276 (2009); *Poulet v. H.F.O., L.L.C.*, 353 Ill. App. 3d 82, 89-90 (2004). Thus, the subject matter of the intervenor's section 2-619 motion concerned one of the listed grounds.

¶ 66                                  II. Timeliness

¶ 67         For a section 2-619 motion to be properly brought, it must not only concern a listed ground, but it must also be filed "within the time for pleading." 735 ILCS 5/2-619(a) (West 2014). "The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367

(2003); *Reynolds*, 2013 IL App (4th) 120139, ¶ 30 (the purpose of section 2-619 is to "provide litigants with a method of disposing of issues of law and easily proved issues of fact—*relating to the affirmative matter*—early in the litigation" (emphasis in original)).

¶ 68    Lack of standing is an affirmative defense, and the burden of pleading and proving the defense is on the party asserting it. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010). Our supreme court has held that "a lack of standing will be forfeited if not raised in a timely manner in the trial court." *Lebron*, 237 Ill. 2d at 252-53. Section 2-619 permits defendants to raise an "affirmative matter," such as standing, either in a section 2-619 motion "within the time for pleading" or in their answer as an affirmative defense or in both a motion and the answer. 735 ILCS 5/2-619(a)(9), (a), (d) (West 2014).

¶ 69    In the case at bar, defendant Hudson did not file a section 2-619 motion to dismiss within the time for pleading or at any other time, and she did not plead lack of standing as an affirmative defense in her answer. However, the trial court dismissed the complaint against her "with prejudice as to all counts for lack of standing." The question then becomes whether the intervenor, whose motion the trial court granted, acted in a timely manner.

¶ 70    When interpreting a statute, "we look first and foremost to the language of the statute itself." *People v. Wright*, 2012 IL App (1st) 073106, ¶ 78 (citing

24

*People v. Cardamone*, 232 Ill. 2d 504, 512 (2009)). "Each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous." *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280 (2003).

¶ 71        Section 2-619 states:  "Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds."   735 ILCS 5/2-619(a) (West 2014). In the case at bar, intervenor was not a "Defendant."  The complaint alleges that he was a victim. Since he was not a defendant, he was not required by the trial court to plead, and thus the only "time for pleading" was that of the only defendant, and that time expired when she filed her answer.

¶ 72        Even if we believed that such a literal interpretation, which would preclude this intervenor from challenging standing, was not within the spirit of the law, our supreme court has held that the "purpose" of section 2-619 is to dispose of affirmative matters at the very "outset" of litigation. *Van Meter*, 207 Ill. 2d at 367; *Reynolds*, 2013 IL App (4th) 120139, ¶ 30 (the purpose of section 2-619 is to dispose of matters "early in the litigation").  In the case at bar, discovery on the substantive issues was well under way, and the intervenor had already filed a motion for summary judgment.  Although summary judgment motions may be brought at any time (735 ILCS 5/2-1005(b) (West 2014)), they

are routinely brought at the close of discovery, because they may be found premature or untimely if discovery is outstanding. *E.g.*, *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 690-91 (2000). This court has previously stated: "It is only when a legally sufficient cause of action has been stated should the trial court ever entertain a motion for summary judgment which, by its very nature, almost necessarily assumes that a good and sufficient claim has been pled." *Paul H. Schwendener, Inc. v. Jupiter Electric Co.,* 358 Ill. App. 3d 65, 80 (2005) (citing *Janes v. First Federal Savings & Loan Ass'n of Berwyn*, 57 Ill. 2d 398, 406 (1974) ("[w]hen, and only when, a legally sufficient cause of action had been stated should the court have entertained the motions for summary judgment")). Thus, whether we look to the letter or spirit of the law, the intervenor's motion under section 2-619 was not timely.

¶ 73                                    III. The Tort Counts

¶ 74          Even if we were persuaded that the intervenor's motion was timely, plaintiffs also argued, before the trial court and before this court, that the intervenor lacked standing to move for dismissal of the tort claims directed solely against defendant Hudson. Plaintiff argues that, even if the intervenor had standing to argue against the vacating of the trust amendment which he signed, that was just one of the remedies which plaintiffs sought. In their four-count tort complaint against defendant Hudson, plaintiffs also sought monetary

damages. However, the trial court dismissed the entire complaint against defendant Hudson with prejudice.

¶ 75 Both counts I and IV sought a declaration that the trust amendment was void. Count I alleged that defendant exercised undue influence in securing the trust amendment and sought to void the amendment. Similarly, count IV sought a constructive trust, the voiding of the amendment and the removal of defendant Hudson as successor trustee. By contrast, counts II and III sought only monetary damages against defendant Hudson. Count II alleged tortious interference, and count III alleged fiduciary fraud.

¶ 76 In response, the intervenor argues that he has a legally cognizable interest in all matters relating to the Halicki Family Trust and that he has standing to protect his property interest. However, an award of monetary damages against defendant Hudson will not affect his property interest. Defendant Hudson argues that plaintiffs' tort claims lack merit, but the issue before us is not the underlying merit of the claims but only the standing to raise them.

¶ 77 Thus, even if we were persuaded that the intervenor's motion was timely, we would still find that he lacked standing to move to dismiss the two tort counts against defendant Hudson.

¶ 78                          IV. Plaintiffs' Standing

¶ 79        Lastly, defendant Hudson and intervenor Zygmunt argue that plaintiffs lack standing because: (1) the beneficiary of an *inter vivos* trust has no vested interest and thus plaintiffs had no standing to sue under the original trust document; and (2) even if plaintiffs had an interest under the original trust document, they lost that interest under the amendment.

¶ 80              A. Standing Under the Original Trust Document

¶ 81        First, "[w]hile a beneficiary has no interest in a will until the death of the testator, the beneficiary of a trust has an interest the moment the trust is created." *In re Estate of Ostern*, 2014 IL App (2d) 131236, ¶ 27 (citing *In re Estate of Michalak*, 404 Ill. App. 3d 75, 83 (2010)).

¶ 82        In support of their argument that plaintiffs lacked an interest under the original trust document, defendant and intervenor cite *In re Estate of Henry*, 396 Ill. App. 3d 88 (2009). The trial court, in its written order, also relied solely on the *Henry* case, stating: "the Plaintiffs lack standing as a matter of law; *In re Estate of Richard V. Henry*, 396 Ill. App. 3d 88 (2009) is controlling and dispositive to the issue of standing." In the *Henry* case, the court held that a caretaker and an executor lacked standing to challenge the court's amendment of a ward's will since the interests in the ward's property would not vest until the death of the ward. *Henry*, 396 Ill. App. 3d at 97-98.

¶ 83    However, in *Michalak*, this court specifically distinguished *Henry* and explained why it did not apply to trusts. We explained:

"The principal distinction between a will and a trust is that in the former, the beneficiary has no interest until the death of the testator, while in the latter, [the] beneficiary has an interest the moment the trust is created. *Favata v. Favata*, 74 Ill. App. 3d 979, 982 *** (1979). The fact that a beneficiary's actual enjoyment of the trust *res* is contingent upon the settlor's death does not negate the existence of a present interest in the beneficiary during the settlor's lifetime. *In re Estate of Zukerman*, 218 Ill. App. 3d 325, 332 *** (1991), citing *Farkas v. Williams*, 5 Ill. 2d 417, 425-26 *** (1955) and *In re Estate of Petralia*, 32 Ill. 2d 134, 137-38 *** (1965)." *Michalak*, 404 Ill. App. 3d at 83-84.

See also *Farkas v. Williams*, 5 Ill. 2d 417, 422 (1955) ("[i]mmediately" upon the creation of an *inter vivos* revocable trust, the settlor cannot deal with the property "as if he owned the property absolutely," as he could with a will, but he must act in accord with the trust's terms or revoke the trust).

¶ 84    After explaining this distinction, we held in *Michalak* that the beneficiaries of an *inter vivos* trust had standing to challenge the validity of an amendment to that trust, which is the same issue facing us in the case at bar. *Michalak*, 404 Ill. App. 3d at 83-84. The facts in *Michalak* are similar to the

facts at bar. In *Michalak*, the trust was created by an elderly person who spoke only Polish and who placed her home in the trust, as in the case at bar. *Michalak*, 404 Ill. App. 3d at 78. The beneficiaries in *Michalak* were her two neighbors. *Michalak*, 404 Ill. App. 3d at 78. After the trust's creation, her relatives challenged the validity of the trust and obtained a court-ordered amendment which removed the neighbors as beneficiaries. *Michalak*, 404 Ill. App. 3d at 82. The initial issue before the reviewing court was whether the beneficiaries under the original trust document had standing on appeal to challenge the amendment which removed them as beneficiaries, which is similar to the issue here. *Michalak*, 404 Ill. App. 3d at 82-83. The *Michalak* court held that they had standing, and we adhere to our precedent. *Michalak*, 404 Ill. App. 3d at 84 (the neighbors "had an equitable remainder interest, which vested immediately upon the creation of the trust and, therefore, they have standing to appeal the circuit court's order").

¶ 85      In her brief to this court, defendant Hudson does not mention or cite the *Michalak* case, and thus does not try to distinguish it from the case at bar. The trial court's written order dismissing the case also makes no mention of this court's 2010 *Michalak* case and relies solely on our earlier 2009 *Henry* case. In his brief, the intervenor tries to distinguish *Michalak* on the ground that

*Michalak* involved an incompetent adult, whereas our case involves a competent adult.

¶ 86    First, this argument assumes a fact that is in contention. On September 3, 2014, plaintiffs moved for entry of an order allowing plaintiffs to have a professional mental and physical evaluation performed of intervenor Zygmunt. The trial court did not rule on their motion before dismissing the case with prejudice for lack of standing.

¶ 87    Second, the settlor in *Michalak* was not deemed a disabled adult until after the creation of the trust, so her disability did not affect the issue of whether the beneficiaries gained an interest at the moment of the trust's creation. *Michalak*, 404 Ill. App. 3d at 78-79 (the settlor was deemed disabled by Alzheimer's disease seven months after the creation of the trust), 82 (the trial court declined to rule on the settlor's capacity at the time of the creation of the trust).

¶ 88    Third, this argument draws a distinction without a difference.  The first question before us is whether the beneficiaries had an interest from the moment the trust was created.  In *Michalak*, although a question was raised about whether the settlor was disabled from the moment that the trust was created, the beneficiaries under the original document were *still* deemed to have standing. *Michalak*, 404 Ill. App. 3d at 84 (the neighbors "had an equitable remainder

interest, which vested immediately upon the creation of the trust and, therefore, they have standing"). If a trust document by a possibly disabled adult is enough to create standing, then certainly a trust document by adults, who, everyone agrees, were competent when the trust was created, should be enough to confer standing. Thus, under the *Michalak* case, plaintiffs had standing under the original trust document.

¶ 89                              B. Standing After the Amendment

¶ 90        Next, the intervenor and defendant argue, in essence, that, even if plaintiffs had an interest under the original trust document, they lost that interest under the amendment. However, as we explained above, the *Michalak* case stands for the opposite. In addition, this argument is circular. It presumes the validity of the very amendment which plaintiffs are challenging. Yet the validity of the amendment has not yet been established; that question goes to the merits of the action, which the trial court has yet to reach. Thus, we remand to give the trial court an opportunity to reach that question.

¶ 91                                      CONCLUSION

¶ 92        For the foregoing reasons, we reverse the trial court's grant of the intervenor's section 2-619 motion to dismiss for lack of standing and remand for further proceedings consistent with this opinion. First, the intervenor's motion was not timely; second, he had no standing to move to dismiss the two tort

counts directed solely against defendant Hudson; and, lastly and most importantly, plaintiffs had standing to contest the validity of the trust amendment which removed them as beneficiaries. Thus, the matter is remanded for further proceedings on all four counts.

¶ 93          Reversed and remanded.