# Illinois Official Reports

## Appellate Court

---

### *Maschek v. City of Chicago*, 2015 IL App (1st) 150520

---

| | |
|---|---|
| Appellate Court Caption | KENNETH MASCHEK, Individually and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. THE CITY OF CHICAGO, a Municipal Corporation, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-0520 |
| Filed | December 11, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-014527; the Hon. Mary Lane Mikva, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Myron Cherry, Jacie C. Zolna, and Alexandra L. Nickow, all of Myron M. Cherry & Associates LLC, of Chicago, for appellant.<br><br>Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Suzanne M. Loose, Assistant Corporation Counsel, of counsel), for appellee. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Presiding Justice Reyes and Justice Palmer concurred in the judgment and opinion. |

**OPINION**

¶ 1     In this appeal, plaintiff Kenneth Maschek appeals the trial court's grant of defendant City of Chicago's (City) motion to dismiss. In this case, plaintiff challenged a traffic ticket on the ground that the ticket was the result of an automated speed enforcement (ASE) camera operating near Lane Tech College Prep High School (Lane Tech) and that the law governing ASE cameras prohibited the City from operating an ASE camera near a school on that day. 625 ILCS 5/11-208.8(a-5) (West 2014) (ASE law).

¶ 2     The ASE law governs the conduct of the City but not the driver. The ASE law dictates when the City can and cannot operate ASE cameras. However, drivers must still conform to the law, whether or not an ASE camera is running. The speed limit for a vehicle in the City is 30 miles per hour,[1] and plaintiff does not contest the fact that he was 11 miles per hour over this limit.

¶ 3     In addition, plaintiff paid the ticket and did not challenge the underlying speeding violation. Thus, he waived for our consideration whether he was or was not violating the law. On this appeal, he does not argue that he was obeying the law but argues only that, even if he was violating the law, the City was not allowed to use an ASE camera to catch him.[2]

¶ 4     Plaintiff argues that ASE cameras are allowed to operate only on school days, that summer school days are not school days, and thus the City was not allowed to issue an ASE-based ticket on June 26, 2014, the day he was speeding. Plaintiff does not contest that this day was a scheduled class day for special needs children at Lane Tech.

¶ 5     Special needs children have an extended school year, such that a regularly scheduled school day for them included June 26, 2014, at Lane Tech. See *infra* ¶¶ 74-76; 105 ILCS 5/14-13.01 (West 2014) (providing for up to "235 school days"). Although plaintiff raises arguments about the "school year" and the "school calendar," the operative phrase in the ASE law is "school day[ ]," and a school day for a special needs child is defined as a day that he or she is "in attendance at school for instructional purposes." 34 C.F.R. § 300.11(c)(1), (2) (2014); 23 Ill. Adm. Code 226.75 (2007) (adopting this definition for Illinois).

¶ 6     Plaintiff engages in a number of hypotheticals–what if at another school the math team was meeting on a Saturday–would that count as a school day? However, that is not the case in front of us. In the case in front of us, plaintiff was issued a ticket near a school where special needs children were attending regularly scheduled classes.

---

[1]Under Illinois state law, unless some other speed restriction is established, "the maximum speed limit in an urban district for all vehicles is: *** 30 miles per hour." 625 ILCS 5/11-601(c)(1) (West 2014). The Chicago Municipal Code states: "The provisions of Section 11-601 of the Illinois Vehicle Code shall be applicable on all streets within and under jurisdiction of the city. The absolute statutory urban speed limit shall be 30 miles per hour in streets." Chicago Municipal Code § 9-12-070(a) (amended Apr. 26, 2006). The Illinois Vehicle Code defines an "urban district" as: "The territory contiguous to and including any street which is built up with structures devoted to business, industry or dwelling houses situated at intervals of less than 100 feet for a distance of a quarter of a mile or more." 625 ILCS 5/1-214 (West 2014). Plaintiff does not contest that Lane Tech was in an urban district with a speed limit of 30 miles per hour and that he was traveling 11 miles over this limit.

[2]This is a question which he has standing to raise, for reasons we explain below.

¶ 7 Plaintiff argues how will a driver be on notice when he or she should slow down. The ASE law, as applied to and argued by plaintiff, concerns enforcement only, *i.e.*, when may the City use automatic cameras to catch violators. However, the violation occurred whether or not the ASE camera was operating. The law governing plaintiff's behavior was still in effect, whether or not the ASE camera was running, and that law provided for a 30-mile per hour speed limit. A driver does not have to be on notice about when he is most likely to be caught.

¶ 8 Since the days of the horse and buggy, long before there were ASE cameras, drivers knew to slow down near a school. Society benefits if drivers have an automatic, knee-jerk reaction–see a school, slow down. Even when classes are not in session, children have a tendency to gather and play on the amenities which schools often provide, such as basketball courts and open spaces. Encouraging drivers to slow down furthers the safety of children, whether or not the drivers are caught. This "slow down" is specifically what the sponsor of the ASE bill claimed as a safety benefit, which benefits society as a whole. See 97th Ill. Gen. Assem., House Proceedings, Nov. 9, 2011, at 131 (statements of Representative Currie).

¶ 9 Plaintiff argues that there were only 70 students at the school, and 70 children is not enough to matter, when you consider the overall population of that particular school. However, he does not state how many children it does take to matter, and neither did the legislature. The law is phrased in terms of a school day, not in terms of numbers of children or percentages at a particular school. The law applies to even the smallest primary school in Chicago.

¶ 10 For these reasons and the reasons which we discuss below, we find that "school days" includes the special education classes which were in session at Lane Tech on June 26, 2014, and we affirm. Since special needs children were in school on June 26, 2014, at Lane Tech, we need not make a determination with respect to the other classes in session.

¶ 11                                    BACKGROUND
¶ 12                                  I. The Complaint
¶ 13 On October 31, 2014, plaintiff filed a complaint which alleged that he received a $100 speeding ticket as the result of the operation of an ASE camera on June 26, 2014, and that he paid the fine. Plaintiff alleged that the camera was located in a "School Safety Zone at 2549 W. Addison St. which is adjacent to Lane Tech College Prep High School" and that he was "the registered owner of the vehicle." Plaintiff alleged that, on September 18, 2014, the City issued a press release stating that ASE " 'enforcement hours will be limited from 7 a.m. to 7 p.m. in safety zones around schools on school days (Monday through Friday).' " Plaintiff claimed that the regular academic year had already ended and would not begin again until September 2, 2014, and thus the City was not allowed to operate an ASE camera on Thursday, June 26, 2014. Plaintiff sought class certification and brought counts for declaratory judgment, injunction, unjust enrichment and fraud.

¶ 14                            II. Defendant's Motion to Dismiss
¶ 15 On December 17, 2014, the City moved to dismiss plaintiff's complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure on the ground that plaintiff's claims were

barred by an "affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2014).

¶ 16    Defendant argued: "In short, Plaintiff challenges the authority of the City to cite his vehicle for travelling 41 miles per hour in a 30 mile per hour zone adjacent to Lane Tech *** at 5:26 p.m. on June 26, 2014, using [ASE] cameras because Plaintiff believes that June 26, 2014, was not a 'school day.' The City is only authorized to use ASE cameras adjacent to schools on 'school days.' "

¶ 17    Defendant further argued: "All of Plaintiff's claims fail because it is an easily proved issue of fact that classes were in session at Lane Tech on June 26, 2014, and accordingly June 26, 2014, was a school day at Lane Tech."

¶ 18    Defendant also argued (1) that plaintiff lacked standing to claim that he had been issued a ticket not authorized by law, since that had not happened to him; (2) that he had failed to exhaust his administrative remedies, since he voluntarily paid the ticket; and (3) that the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) barred plaintiff's fraud claim (745 ILCS 10/2-107 (West 2014)).

¶ 19    Defendant attached exhibits which included a copy of the ticket mailed to plaintiff. The ticket, which was entitled an "Automated Speed Enforcement Violation," informed plaintiff that he had 14 days, or until July 27, 2014, to pay $100 or contest the ticket by mail or request an in-person hearing. The ticket listed the "Violation Code" as "9101020**," which the City's website explains is for speeding 11 miles per hour or more over the speed limit and is subject to a $100 fine. City Of Chicago, *Parking, Compliance, and Automated Enforcement Violations* (Apr. 2014), http://www.cityofchicago.org/city/en/depts/fin/supp_info/revenue/general_parking_ticketinformation/violations.html (from a list of "speed violations that can be issued," current as of April 2014). The ticket listed the "Description" of the violation as a "Speed Violation 11+," for traveling 11 miles per hour or more over the speed limit, and it stated that the vehicle was traveling 41 miles per hour. The ticket also described the violation as occurring on July 26, 2014, at 5:26 p.m., in a "School Safety Zone."[3]

¶ 20    Defendant's attached exhibits also included the affidavit of Nancy Quintana, the executive director of Instructional Support for the Board of Education of the City of Chicago who swore, in relevant part, that:

> "5. During the summer of 2014, classes were held and students were present at Lane Tech on Mondays, Tuesdays, Wednesdays, and Thursdays from June 23, 2014 until July 31, 2014.
>
> 6. June 26, 2014, was a Thursday and classes were in session [at] Lane Tech on that day.
>
> 7. Classes offered at Lane Tech in the summer of 2014 included extended school year ('ESY') classes for students with special needs and virtual learning credit recovery classes. Both types of classes were in session on June 26, 2014.

---

[3]The Chicago Municipal Code authorizes a fine of $500 for traveling more than 20 miles per hour in a school safety zone on "a school day." However, plaintiff's ticket was for only $100. Chicago Municipal Code § 9-12-075 (amended Apr. 26, 2006). See also 625 ILCS 5/11-605(a) (West 2014) ("On a school day *** no person shall drive a motor vehicle at a speed in excess of 20 miles per hour while passing a school zone ***.").

8. At Lane Tech during the 2014 summer session approximately 60 students were enrolled in ESY classes and approximately 40 students actually attended ESY classes.

9. The ESY program provides extended school year services to students with special needs based on a student's individualized education program ('IEF') pursuant to federal special education law.

10. At Lane Tech during the 2014 summer session approximately 31 students were enrolled in and attended the virtual learning credit recovery program.

11. Students in the virtual learning credit recovery program take online courses to make up credits in order to meet graduation requirements. Students in this program must physically attend scheduled classes in the credit recovery computer lab to take the online courses."

In his response, plaintiff did not contest the facts sworn to in the above affidavit, arguing instead that, "[e]ven if 40 students actually attended classes at Lane Tech during the summer, and 31 additional students attended the virtual learning credit recovery program [citations], 71 students constitutes a very small minority only (1/69%) of Lane Tech's 4,200-student population."

In reply, defendant observed that the Code of Federal Regulations provides that "[s]chool day means any day, including a partial day that children are in attendance at school for instructional purposes," and that "[s]chool day has the same meaning for all children in school, including children with and without disabilities." 34 C.F.R. § 300.11 (2014); 23 Ill. Adm. Code 226.75 (2007) (adopting definition).

### III. Trial Court's Dismissal Order

On February 18, 2015, the trial court issued a written dismissal order which stated in full:

"This matter coming to be heard on defendant's section 2-619 motion to dismiss, with the court being fully advised in the premises, it is hereby declared:

(1) For the reasons stated on the record, before a certified court reporter, defendant's 2-619 motion to dismiss is granted[.]

(2) For the reasons stated on the record, plaintiff's request for leave to amend is denied.

(3) This order is final and appealable."

At the hearing, the trial court stated: "I do agree with the City on its interpretation of what the statute means. To the extent that there is an ambiguity, I think that the legislative history makes quite clear that it's about–as well as common sense would probably make quite clear, but both make it clear that it's about protecting school children, and summer school children are still school children." In response to plaintiff's discussion of statutes which provide a definition of the school year, the trial court stated: "all those statutes have a different agenda. They really do. They are about specific educational requirements. They are about specific things that are not about safety."

The trial court ruled that, since this was a purely legal issue about which the "DOAH," the Department of Administrative Hearings, did not have particular expertise, there was no need for plaintiff to have exhausted administrative remedies.

The City's attorney observed: "the speed limit doesn't change whether it's a school day or not. The speed limit that was applicable here is applicable all the time. It is a

30-mile-per-hour speed limit. Plaintiff was going 41 miles per hour." Even if there is an issue with respect to when the City can or cannot operate the cameras, he noted that "it doesn't change the conduct of drivers at all."

¶ 28 Plaintiff's counsel then interjected, asking if he could "hop in on this issue." When the court agreed, he stated: "The speed is irrelevant to this suit. *** At issue is *** whether the City had the authority to operate [the cameras] and issue violations at that particular time. Now, if there was an officer, police officer, who was present at that time, and he clocked someone going 50 miles an hour," he could have issued a ticket. Plaintiff's counsel stressed that: "The issue is whether there should have been an issuance of the speed cameras because those powers are limited."

¶ 29 Plaintiff's counsel stated that he had made a request in his response, that, if the trial court ruled that the day in question was a school day, then he should be allowed to amend his complaint. He sought to amend in order to challenge the constitutionality of the law on its face on vagueness grounds, because a driver would not know when the cameras were operating. When the trial court observed that this issue was not in the briefs, plaintiff stated that it was in a footnote. However, plaintiff's brief does not request, either in a footnote or in the text, leave to amend the complaint.

¶ 30 The trial court asked the City's attorney to respond to the issue, and he stated: "Legislation is only unconstitutionally vague if it does not provide a person with a reasonable opportunity to know what conduct is prohibited so that he or she may conform his or her conduct accordingly. Here the 30-mile-per-hour speed limit was clear."

¶ 31 The trial court denied plaintiff's request to amend, stating that plaintiff was not "injured by any alleged vagueness, since it's clear he did not conform his conduct to any possible speed limit, including the 30-mile-an-hour limit." The trial court also granted defendant's motion to dismiss since neither the Vehicle Code nor the School Code provided an applicable definition of "school day," so "the dictionary definition of 'a day in which classes are held in a primary or secondary school' is a very rational place to start." The trial court explained:

"To the extent that there is any ambiguity–and I am not at all sure there is, but to the extent that there is, the legislative history which makes it clear that this is about promoting safety of school children, and at the same time trying to not make the cameras operate unnecessarily lengthy periods of time, does not compel or suggest that the distinction should be made between the school year, the regular school year, and summer school.

So I do believe that the City's definition of 'school day' to include a summer school day is the appropriate definition under the statute and, therefore, the City was within its home rule powers in enforcing the ASE cameras during summer school."

¶ 32 On February 19, 2015, plaintiff filed a notice of appeal, and this appeal followed.

¶ 33                                          ANALYSIS

¶ 34 Plaintiff appeals the trial court's dismissal order on the ground that the City was not allowed to operate an ASE camera on June 26, 2014, near Lane Tech, when classes for students with special needs and virtual learning credit recovery classes were in session, because this day did not qualify as a school day. For the following reasons, we affirm.

¶ 35                                    I. Standard of Review
¶ 36                                   A. Section 2-619 Motion
¶ 37      On this appeal, plaintiff asks us to reverse the trial court's dismissal order, which was granted pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)). "A motion to dismiss, pursuant to section 2-619 of the Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006).

¶ 38      When we review a section 2-619 dismissal, our standard of review is *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006); *American Service Insurance Co. v. City of Chicago*, 404 Ill. App. 3d 769 (2010). *De novo* review means that the reviewing court performs the same analysis that a trial judge would perform. *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2012 IL App (1st) 121183, ¶ 37.

¶ 39      When reviewing a "motion to dismiss under section 2-619, a court must accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). "In ruling on a motion to dismiss under section 2-619, the trial court may consider pleadings, depositions, and affidavits." *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 262 (2004). "[T]he court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 141 (2006).

¶ 40      Even if the trial court dismissed on an improper ground, a reviewing court may affirm the dismissal, if the record supports a proper ground for dismissal. *Raintree*, 209 Ill. 2d at 261 (when reviewing a section 2-619 dismissal, we can affirm "on any basis present in the record"); *In re Marriage of Gary*, 384 Ill. App. 3d 979, 987 (2008) ("we may affirm on any basis supported by the record, regardless of whether the trial court based its decision on the proper ground").

¶ 41                                 B. Statutory Interpretation
¶ 42      The *de novo* standard of review also applies because the parties ask us to interpret the meaning of the phrase "school days" as used in the ASE law or section 11-208.8 of the Illinois Vehicle Code (625 ILCS 5/11-208.8 (West 2014) (entitled "Automated speed enforcement systems in safety zones")). The interpretation of a statute is a question of law that we also review *de novo*. *People v. Anthony*, 2011 IL App (1st) 091528, ¶ 8.

¶ 43      "As we do in every case of statutory interpretation, we look first and foremost to the language of the statute itself." *People v. Wright*, 2012 IL App (1st) 073106, ¶ 79 (citing *People v. Cardamone*, 232 Ill. 2d 504, 512 (2009)). "Our primary objective in construing a statute is to give effect to the legislature's intent" (*Wright*, 2012 IL App (1st) 073106, ¶ 79 (citing *Cardamone*, 232 Ill. 2d at 512)), and "[t]he best indication of that intent is the language of the statute itself, which must be given its plain and ordinary meaning." *Brunton v. Kruger*, 2015 IL 117663, ¶ 24. In construing the plain language of the statute, we consider the statute in its entirety, "keeping in mind the subject it addresses and the legislature's apparent objective in enacting it." *Cardamone*, 232 Ill. 2d at 512.

¶ 44      If the statutory language is clear, we must apply it, without resort to any aids of statutory construction. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003). If, and only if, the

statutory language is ambiguous, we may look to other sources to ascertain the legislature's intent. *Krohe*, 204 Ill. 2d at 395. These other sources include primarily the statute's legislative history and debates. *Krohe*, 204 Ill. 2d at 398.

¶ 45                                    II. Threshold Issue

¶ 46        As a threshold matter, the City argues that plaintiff's claim is barred because he voluntarily paid the ticket and failed to exhaust his administrative remedies to contest it. However, plaintiff does not contest either that he was speeding or the amount of the fine for this type of violation. His dispute is not with the underlying violation or the fine, but with the City's means of enforcement.

¶ 47        While our supreme court generally requires strict compliance with the rule requiring exhaustion of administrative remedies, it has recognized several exceptions. *Office of the Cook County State's Attorney v. Illinois Local Labor Relations Board*, 166 Ill. 2d 296, 306 (1995); *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308 (1989). An aggrieved party may seek judicial review of an administrative decision without first exhausting administrative remedies for several reasons, including: "where [(1)] no issues of fact are presented or [(2)] agency expertise is not involved," or "[(3)] where the agency's jurisdiction is attacked because it is not authorized by statute." *Castaneda*, 132 Ill. 2d at 308-09. See also *Office of the Cook County State's Attorney*, 166 Ill. 2d at 306. In the case at bar, all three quoted exceptions apply. First, no issues of fact are presented, since plaintiff does not contest that he was speeding. Second, the agency's expertise is not involved, since this case does not require a resolution of whether plaintiff did or did not violate the law. Third, plaintiff attacks the City's jurisdiction or authority to issue the ticket, claiming that it was not authorized by statute.

¶ 48        In addition, "[t]he issue before us is one of statutory and case law interpretation, and therefore it falls within the scope of our particular expertise and not the [agency's]." *Office of the Cook County State's Attorney*, 166 Ill. 2d at 306. "As we have previously noted in discussing the exhaustion rule and its exceptions, '[t]he agency's particular expertise is not implicated in statutory construction.' " *Office of the Cook County State's Attorney*, 166 Ill. 2d at 306-07 (quoting *Landfill, Inc. v. Pollution Control Board*, 74 Ill. 2d 541, 550 (1978)).

¶ 49        Accordingly, we conclude that the exhaustion doctrine is not a bar to our consideration of the present dispute. *Office of the Cook County State's Attorney*, 166 Ill. 2d at 307.

¶ 50                                    III. Two Issues

¶ 51        The case before us presents two distinct issues: whether the schooling of special needs children qualifies as a school day for purposes of the ASE law and whether recovery classes qualify as a school day for purposes of the ASE law. In the case at bar, 40 students attended an extended school year program for students with special needs, and another 31 students attended virtual learning credit recovery classes to make up credits in order to meet graduation requirements. If either qualifies as a school day, we must affirm the trial court in the case at bar.

¶ 52        First, we will examine the plain language of the statute. Second, if there is an ambiguity, we will look to the legislative purpose. Lastly, the parties make arguments based on the

provisions of other codes, which we will examine.

¶ 53                            IV. Plain Language

¶ 54      As we observed above, if the language of the statute is clear, we are not allowed to go further. See *Krohe*, 204 Ill. 2d at 395.

¶ 55      The Illinois Vehicle Code authorizes the City to utilize ASE cameras to enforce the speed limit near schools "on school days." 625 ILCS 5/11-208.8(a-5)(i) (West 2014). On this appeal, plaintiff does not claim either that he was not speeding or that he was not sufficiently near a school. The dispute concerns the meaning of the phrase "school days." As noted above, plaintiff argues that school days should not include: (1) extended year classes for special needs children and (2) recovery classes for children seeking to meet graduation requirements.

¶ 56      The Vehicle Code does not provide a definition of the term. Thus we must turn to the term's plain and ordinary meaning. As we observed above, our primary goal in construing a statute is to give effect to the legislature's intent, and the best indication of that intent are the words of the statute itself, which must be given their plain and ordinary meaning. *Brunton*, 2015 IL 117663, ¶ 24; *People v. McChriston*, 2014 IL 115310, ¶ 15. When a statute does not define its own terms, a reviewing court may use a dictionary to ascertain the plain and ordinary meaning of those terms. *McChriston*, 2014 IL 115310, ¶ 15; *People v. Bingham*, 2014 IL 115964, ¶ 55.

¶ 57      While courts and lawyers frequently rely on Black's Law Dictionary to define terms (*e.g.*, *McChriston*, 2014 IL 115310, ¶ 17), there is no definition of school day in that dictionary. In its brief, the City quotes a number of dictionaries which define the term as a day on which classes are held or school is conducted or in session. We will not quote them all here, but we provide an example from the New Oxford American Dictionary https://www. oxforddictionaries.com/us/definition/American_english/school-day (last visited Oct. 16, 2015), which defines "school day" as "a day on which classes are held in a primary or secondary school." This is the only definition that this dictionary provides for this term. Accord American Heritage Dictionary of the English Language (5th ed. 2015), https://www.ahdictionary.com/word/search.html?q=school+day&submit.x=54&submit.y=23 (last visited Oct. 16, 2015) (defining "school day" as: "1. A day on which school is in session. 2. The part of a day during which school is in session.").

¶ 58      Since classes were held and were in session on June 26, 2014, the plain and ordinary dictionary meaning of the term shows that it was a school day. Plaintiff does not argue that there is a definition from another dictionary which we should employ or that application of these definitions results in a different conclusion. Instead, he argues, as we discuss in a section below, that we should turn to other statutory codes, outside the Vehicle Code, for a definition. See *infra* ¶ 68 (VI. Provisions of Other Codes).

¶ 59                            V. Statutory Purpose

¶ 60      After a court examines the plain and ordinary meaning of the language, the rules of statutory construction direct us to consider the statute's legislative history, if the words still appear ambiguous. *Krohe*, 204 Ill. 2d at 395, 398. Although we do not find the language ambiguous, the undisputed purpose of the statute wipes out any doubt.

¶ 61    The legislative history shows that the legislators' primary purpose in enacting the ASE law was the safety of the children, and plaintiff does not argue otherwise in this appeal.

¶ 62    As we noted above, a statute's legislative history and debates can be valuable construction aides in interpreting an otherwise ambiguous statute. *Krohe*, 204 Ill. 2d at 398. When interpreting an ambiguous phrase in a statute, our supreme court looks especially to the remarks of the bill's sponsor. *Krohe*, 204 Ill. 2d at 398. See also *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 68 (giving more weight to the remarks of "the chief sponsor of the legislation"); *Julie Q. v. Department of Children & Family Services*, 2013 IL 113783, ¶ 31 (quoting the sponsor's remarks when interpreting a statute). The remarks made immediately prior to passage are particularly important. *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶¶ 51-53 (quoting the sponsors' remarks in order to interpret a statute and noting that, following these remarks, the bill passed).

¶ 63    In the case at bar, the ASE law passed both houses on November 9, 2009. On that same day, shortly before the final vote, Representative Barbara Flynn Currie, who was the sponsor of the bill, stated that its purpose was " 'to protect children.' " 97th Ill. Gen. Assem., House Proceedings, Nov. 9, 2011, at 131 (statements of Representative Currie). She explained that, " 'when you have strong enforcement of the speeding laws, guess what, people slow down.' " 97th Ill. Gen. Assem., House Proceedings, Nov. 9, 2011, at 131 (statements of Representative Currie). Currie stated: " 'This would not apply on nonschool days. So, holidays, Saturdays, and Sundays are not covered ***.' " 97th Ill. Gen. Assem., House Proceedings, Nov. 9, 2011, at 140 (statements of Representative Currie). She later repeated that ASE cameras would operate "only on school days, not on Saturdays, not on Sundays, not on holidays." 97th Ill. Gen. Assem., House Proceedings, Nov. 9, 2011, at 140 (statements of Representative Currie). In the case at bar, the day in question was not a Saturday, Sunday or holiday.

¶ 64    Senator John J. Cullerton, a sponsor of the bill in the Senate, stated:

"We have in Chicago a pedestrian fatality rate that's sixty-eight percent higher than New York City. And we do lose a number of–young children in these crashes in the City of Chicago. We have seen in other areas of this nation where they've had this program, there's a big decrease in the number of tickets that are issued ***. And as a result, safety ensues." 97th Ill. Gen. Assem., Senate Proceedings, Oct. 26, 2011, at 61 (statements of Senator Cullerton).

¶ 65    The only portion of the legislative history quoted by plaintiff concerns the limits that the legislature placed on: (1) the location of the ASE cameras, (2) the amount and use of the fines, and (3) the calibration of the cameras. On November 9, 2011, Representative Currie stated that, although ASE cameras provided the City with an opportunity to protect children:

" 'We do limit the opportunity for the City Council to do that, an eighth of a mile from schools, an eighth of a mile from parks. We restrict how revenues can be used. We require frequent calibration using Illinois State Police standards, but we know all the studies show us that when you have strong enforcement, when you have strong enforcement of the speeding laws, guess what, people slow down.' " 97th Ill. Gen. Assem., House Proceedings, Nov. 9, 2011, at 131 (statements of Representative Currie).

Similarly, Representative Currie stated later:

"Representative Currie: '*** [W]hat we have here are limits. We curtail what they can do, but it may be they want to do a lot less. So, for example, we say an eighth of a mile of a school or a park …'

Representative Eddy: 'Yeah.'

Representative Currie: '… they could reduce that further. We say 100[,] $50 for violations up to 10 miles above the speed limit, a 100 beyond that. They could go lower. They could say 25 for the first[.]' " 97th Ill. Gen. Assem., House Proceedings, Nov. 9, 2011, at 133-34 (statements of Representatives Currie and Eddy).

¶ 66    These quotes, to which plaintiff draws our attention, do not concern limiting the definition of school days and thus are inapposite to our discussion.

¶ 67    In sum, the legislative history shows that the legislators' primary purpose was to protect children, and that they intended to limit the protection to days when children were in school and to exclude Saturdays, Sundays and holidays. This history bolsters our conclusion that Thursday, June 26, 2014, when both special needs children and summer school children were in school, was a school day.

¶ 68                        VI. Provisions of Other Codes

¶ 69    Plaintiff argues that we should define school day for purposes of the Vehicle Code, based on information provided by the Chicago Public Schools and on provisions in other codes.

¶ 70    Plaintiff argues that the Chicago Public School's Calendar for 2013-14 shows that Thursday, June 26, 2014, was not a school day. However, the calendar specifically lists "[d]ays of non-attendance for students," and June 26 was not one of these days. Since June 26 was not a "non-attendance" day, then students were in attendance, and it was a school day for them.[4]

¶ 71    Plaintiff also cites other codes. We are required to look at a statute in its entirety when interpreting one of its terms. *Cardamone*, 232 Ill. 2d at 512 ("we consider the statute in its entirety"). However, while we may turn to other codes, we should only do so when the codes share similar goals and related subjects. See *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 37 (a statute should be "construed in conjunction with other statutes touching on the same or related subjects" "considering the reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained"); *People v. Steppan*, 105 Ill. 2d 310, 321 (1985) ("[b]ecause the statutes under consideration have different goals and purposes," they need not be compared); *People v. Williams*, 376 Ill. App. 3d 875, 892 (2007) (considering "similar *** statute[s]").

¶ 72    In support of his argument, plaintiff cites the definition of "a legal school day" in the Illinois Administrative Code, which requires that 50% or more of a school district's students must be in attendance. 23 Ill. Adm. Code 1.420(f)(3), amended at 35 Ill. Reg. 2230 (eff. Jan. 20, 2011). However, this definition is directed solely to school districts for the "purpose of claiming general State financial aid." 23 Ill. Adm. Code 1.420(f), amended at 35 Ill. Reg. 2230 (eff. Jan. 20, 2011). The section quoted by plaintiff states that it defines "a legal school day, which is eligible to be counted for General State Aid *** *during a work stoppage.*"

[4]The 2013-14 calendar did not explain that the attendance days in the summer were for summer school, which was later noted in the 2014-15 calendar.

- 11 -

(Emphasis added.) 23 Ill. Adm. Code 1.420(f)(3), amended at 35 Ill. Reg. 2230 (eff. Jan. 20, 2011). The purpose of the ASE law before us has nothing to do with calculating state financial aid by a school district during a work stoppage, and, thus, there is no reason for the definitions to carry over. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 470 (2010) (it is proper to compare statutes when they "relat[e] to the same subject matter").

¶ 73   Plaintiff also cites a number of other provisions, such as section 10-19 of the School Code. 105 ILCS 5/10-19 (West 2012). This section authorizes school boards to establish "experimental educational programs, including but not limited to programs for self-directed learning," such as the virtual learning credit recovery program occurring on June 26, 2014, at Lane Tech, in which students took online courses to make up credits in order to meet graduation requirements. 105 ILCS 5/10-19 (West 2012). This section specifically provides that these programs "shall be considered to comply with the requirements of this Section as respects numbers of days of actual pupil attendance." 105 ILCS 5/10-19 (West 2012). Thus, this section does not support plaintiff's argument. See also 105 ILCS 5/14-13.01 (West 2014) (providing for State reimbursement to school districts for special education for up to "235 school days").

¶ 74   In response to plaintiff's citation of other codes, the City points us to a different code, namely, the Code of Federal Regulations. Federal regulation requires a state to provide "[a] free appropriate public education," or FAPE, "to all children residing in the State *** including children with disabilities." 34 C.F.R. § 300.101(a) (2014). "Each State must ensure that FAPE is available to any individual child with a disability who needs special education ***." 34 C.F.R. § 300.101(c)(1) (2014). In order to satisfy this requirement, "[e]xtended school year services," such as those being provided at Lane Tech, must be "available as necessary." 34 C.F.R. § 300.106(a) (2014).

¶ 75   Illinois law requires each school district to comply with all applicable federal regulations, and it specifically demands compliance with federal regulations for "the provision of extended school year services." 23 Ill. Adm. Code 226.710(a), (b)(7) (2007). See also 105 ILCS 5/14-8.02(a) (West 2014) (FAPE must "be available to all children with disabilities").

¶ 76   For the purposes of special education classes, the Code of Federal Regulations defines a "school day" as follows:

"(c)(1) School day means any day, including a partial day that children are in attendance at school for instructional purposes.

(2) School day has the same meaning for all children in school, including children with and without disabilities." 34 C.F.R. § 300.11(c)(1), (2) (2014).

Illinois adopted this definition in its Administrative Code, so the definition is a part of Illinois as well as federal law. 23 Ill. Adm. Code 226.75 (2007). Similar to the dictionary definitions, a school day in the above-quoted definition means a day that "children are in attendance at school for instructional purposes," and it specifically includes children with disabilities, such as the children who were in school on June 26, 2014, at Lane Tech. See 34 C.F.R. § 300.11(c)(1), (2) (2014); see also 105 ILCS 5/14-13.01 (West 2014) (providing for state reimbursement to school districts for special education for up to "235 school days").

¶ 77   Thus, the schooling of special needs children qualifies as a school day for purposes of the ASE law. Since special needs children were in school on June 26, 2014, at Lane Tech, we

need not consider whether recovery classes also qualify as school days.

¶ 78                                           VII. Leave to Amend

¶ 79      In a one-paragraph argument in his brief, plaintiff asks us, in the alternative, to find that the trial court abused its discretion by denying him leave to amend his complaint.

¶ 80      When ruling on a motion to amend a complaint, the trial court enjoys broad discretion. *Ahmed v. Pickwick Place Owners' Ass'n*, 385 Ill. App. 3d 874, 881-82 (2008) (citing *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273-74 (1992)). A reviewing court will not reverse a trial court's denial of a motion for leave to amend unless there has been a manifest abuse of that discretion. *Ahmed*, 385 Ill. App. 3d at 881-82 (citing *Loyola Academy*, 146 Ill. 2d at 273-74). In considering whether the trial court abused its discretion, a reviewing court must consider whether the proposed amendment would have cured the defective pleading. *Ahmed*, 385 Ill. App. 3d at 881 (quoting *Loyola Academy*, 146 Ill. 2d at 273). "If the amendment would not have cured a defect in the pleading," then the trial court did not abuse its discretion in denying it. *Watkins v. Office of the State Appellate Defender*, 2012 IL App (1st) 111756, ¶ 34.

¶ 81      Plaintiff sought to add a count challenging the Illinois Vehicle Code and the Municipal Code of Chicago as unconstitutionally vague.

¶ 82      A defendant can challenge a statute as unconstitutionally vague in two ways: (1) on the statute's face or (2) as the statute is applied to defendant's actions. *People v. Einoder*, 209 Ill. 2d 443, 448 (2004). A defendant may not challenge the facial vagueness of a statute that does not implicate first amendment freedoms unless the statute is incapable of any valid application. *People v. Izzo*, 195 Ill. 2d 109, 112 (2001). In the case at bar, plaintiff has not argued that the statute, as written, is incapable of any valid application, but rather he challenges the City's interpretation and application of the term "school days." See also *Schacter v. City of Chicago*, 2011 IL App (1st) 103582, ¶ 84 (the plaintiff had no standing to make a facial challenge to municipal ordinances when his conduct clearly fell within the category of prohibited conduct).

¶ 83      The City argues on appeal that the trial court correctly found that plaintiff lacked standing to bring a vagueness claim and, thus, the trial court did not abuse its discretion by denying the proposed amendment.

¶ 84      The purpose of the standing doctrine is to ensure that courts are deciding actual, specific controversies and not abstract ones. *In re M.I.*, 2013 IL 113776, ¶ 32. If a person cannot demonstrate that a statute was applied unconstitutionally to himself, then he may not challenge the statute on the ground that " 'it might conceivably be applied unconstitutionally in some hypothetical case' " against someone else. *In re M.I.*, 2013 IL 113776, ¶ 32 (quoting *People v. Wisslead*, 108 Ill. 2d 389, 397 (1985)).

¶ 85      " '[A] statute does not violate due process clauses of the United States or Illinois constitutions, on grounds of vagueness, if the duty imposed by the statute is prescribed in terms definite enough to serve as a guide to those who must comply with it.' " *Fagiano v. Police Board*, 98 Ill. 2d 277, 282 (1983) (quoting *Chastek v. Anderson*, 83 Ill. 2d 502, 507 (1981)). "A vagueness challenge is a due process challenge, examining whether a statute ' " 'give[s] [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.' " ' [Citation.]" *People v. Greco*, 204 Ill. 2d 400,

415-16 (2003). See also *People v. Einoder*, 209 Ill. 2d 443, 450 (2004) (due process requires a statute to provide a reasonable opportunity to know what is prohibited, so that a citizen knows how to act legally). Thus, a person may challenge a law when the law is so vague that he does not know how to act. Nowhere does the law provide a citizen with the right to challenge a law because he does not know when he is most likely to be caught.

¶ 86    Plaintiff lacks standing to bring a vagueness challenge, since the law governing his behavior was the same whether the ASE cameras were operating or not. Thus, the trial court did not abuse its discretion in denying his request during the dismissal hearing to amend his complaint.

¶ 87                                              CONCLUSION

¶ 88    For the foregoing reasons, we affirm the trial court's grant of the City's motion to dismiss and its denial of plaintiff's request for leave to amend.

¶ 89    Affirmed.