In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 16-2613

DEREK GUBALA, individually and on behalf of all others
similarly situated,

*Plaintiff-Appellant,*

*v.*

TIME WARNER CABLE, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 15 C 1078 — **Pamela Pepper**, *Judge.*

_____

ARGUED JANUARY 4, 2017 — DECIDED JANUARY 20, 2017

_____

Before POSNER, EASTERBROOK, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* Time Warner Cable provides In-
ternet access, television programming, and other online ser-
vices to residences via cable. The plaintiff, Derek Gubala,
subscribed to Time Warner's cable services in 2004 and as
required provided Time Warner with his date of birth, home
address, home and work telephone numbers, social security
number, and credit card information. Two years later, how-

ever, he cancelled his subscription and eight years after that (2014), upon inquiring of Time Warner, learned that all the information he'd given it when he'd subscribed to its residential services a decade earlier remained in the company's possession. And in apparent (though, as explained later in this opinion, not certain) violation of federal law, none of it had been destroyed.

Gubala filed this class-action suit against Time Warner Cable seeking injunctive relief (originally damages as well, but that claim has been abandoned) for alleged violations of 47 U.S.C. § 551(e), the subsection of the Cable Communications Policy Act which provides that a cable operator "shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information [either by a cable subscriber, seeking access to his own information] … or pursuant to a court order."

The district judge dismissed the suit on the ground that the plaintiff lacked standing to bring it. As an alternative ground for dismissal she ruled that even if the plaintiff had standing, he'd failed to state a claim upon which relief could be granted. He couldn't be given an injunction, the only remedy he sought, because he had an adequate remedy at law—namely damages, authorized by section 551(f) of the Cable Act—that he had failed to seek.

We can assume at least tentatively that Time Warner had violated the statute by failing to destroy the personally identifiable information of a person who had subscribed to its service a decade earlier and had canceled his subscription after two years. Gubala knew of the violation (for he had

asked Time Warner whether it had destroyed his personal information and it had replied that it had not), and he may have feared that despite its denial his personal information might have been stolen from Time Warner or sold or given away by it, and if so the recipient or recipients of the information might be using it, or planning to use it, in a way that would harm him. Although it's plausible that he feared this, he never told us that this is what he was worried about. His only allegation is that the retention of the information, on its own, has somehow violated a privacy right or entailed a financial loss.

There is unquestionably a *risk* of harm in such a case. But the plaintiff has not alleged that Time Warner has ever given away or leaked or lost any of his personal information or intends to give it away or is at risk of having the information stolen from it. It's true that section 551(f)(1) of the Cable Communications Policy Act provides that "any person aggrieved by any act of a cable operator in violation of this section may bring a civil action in a United States district court," but Gubala has presented neither allegation nor evidence of having been "aggrieved" by Time Warner's violation of section 551(e)—no allegation or evidence that in the decade since he subscribed to Time Warner's residential services any of the personal information that he supplied to the company when he subscribed had leaked and caused financial or other injury to him or had even been at risk of being leaked.

All he's left with is a claim that the violation of section 551(e) has made him *feel* aggrieved. So a claim for damages would get him nowhere because the damages could not possibly be quantified and anyway are not even alleged, and as

for his chosen alternative of seeking injunctive relief in lieu of damages, having not alleged that he's in fact aggrieved by Time Warner's statutory violation he can no more establish irreparable harm (the condition for obtaining such relief) than harm reparable by an award of damages.

The district judge was right, in these circumstances, to rule that the plaintiff does not have standing to sue. Article III, section 2, clause 1 of the U.S. Constitution authorizes the federal judiciary only to decide cases or controversies (the two terms have been treated as synonyms) arising under federal law or within the diversity jurisdiction. The term "cases or controversies" appears to (and has long been held to) exclude advisory opinions, which are authorized under state law in some states, as where a governor asks the state supreme court to advise him on the constitutionality of a proposed statute, a situation in which there is not yet a case because there is not yet a statute. See generally Mel A. Topf, *A Doubtful and Perilous Experiment: Advisory Opinions, State Constitutions, and Judicial Supremacy* (2011).

Even if there is a case—a lawsuit—it is not justiciable under federal law unless the plaintiff has a "concrete" interest in prevailing in the case, for such an interest is the sine qua non of "standing to sue." Gubala's problem is that while he might well be able to prove a violation of section 551, he has not alleged any plausible (even if attenuated) risk of harm to himself from such a violation—any risk substantial enough to be deemed "concrete." See *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)—also *Braitberg v. Charter Communications, Inc.*, 836 F.3d 925 (8th Cir. 2016), a case very similar to this one, litigated on behalf of the plaintiff by the same lawyer who is representing Gubala in the present case. And the type

of interest asserted in cases like *Braitberg* and the present case is not enough to establish standing, as otherwise the federal courts would be flooded with cases based not on proof of harm but on an implausible and at worst trivial risk of harm.

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 566–67 (1992), the Supreme Court said that standing is not

> an ingenious academic exercise in the conceivable, but as we have said requires, at the summary judgment stage, a factual showing of perceptible harm. It is clear that the person who observes or works with a particular animal threatened by a federal decision is facing perceptible harm, since the very subject of his interest will no longer exist. It is even plausible—though it goes to the outermost limit of plausibility—to think that a person who observes or works with animals of a particular species in the very area of the world where that species is threatened by a federal decision is facing such harm, since some animals that might have been the subject of his interest will no longer exist.

There's nothing like that in this case. We're not even told whether Time Warner has ever been found to have violated section 551, or that any other cable company has been, for that matter.

In short, given the requirement of standing, Gubala can no more sue than someone who, though he has never subscribed and means never to subscribe to a cable company, nevertheless is outraged by the thought that Time Warner and perhaps other cable companies are violating a federal statute with apparent impunity.

One is put in mind of John Stuart Mill's famous distinction in *On Liberty* (1859) between what he called "self-

regarding acts" and "other-regarding acts." The former involve doing things to yourself that don't harm other people, though they may be self-destructive. The latter involve doing things that do harm other people. Mill thought government had no business with the former (and hence—his example—the English had no business concerning themselves with polygamy in Utah, though they hated it). For all we can know Time Warner may be losing money by cluttering up its files with old subscription information and opening it to accusations of violating the Cable Communications Policy Act. That's its business. What Gubala has failed to show is even a remote probability that Time Warner's rather puzzling conduct is harmful to him.

The standing rule reduces the workload of the federal judiciary, as does the principle of finality that shortstops much litigation, but does so more innocently because the "victims" of the rule are persons or organizations who suffer no significant deprivation if denied the right to sue, as persons barred by the finality rule frequently are. Nor does the standing rule leave the government without means to enforce its rules, in the present example the requirement that the cable company destroy its former subscribers' personal information. Although we're not aware of a law that authorizes the government to enforce section 551(e) of the Cable Communications Policy Act, or to provide bounties to private enforcers to enforce it, such a law could be enacted by Congress, and presumably would have been had the limited private enforcement that the doctrine of standing permits proved unable to achieve reasonable compliance with the Act.

Gubala argues in his briefs that the Supreme Court's recent admonishment in *Spokeo, Inc. v. Robins, supra*, 136 S. Ct. at 1549, that "Article III standing requires a concrete injury even in the context of a statutory violation," applies only to violations of statutory rights that can be categorized as "procedural" rather than "substantive." But a failure to comply with a statutory requirement to destroy information is substantive, yet need not (in this case, so far as appears, did not) cause a concrete injury. Anyway at oral argument Gubala's counsel conceded the irrelevance of his attempted distinction between substantive and procedural statutory violations, acknowledging that it was foreclosed by *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016), decided after he filed his briefs.

We are mindful of Gubala's further contention, supported by two of the three amicus curiae briefs that have been filed with us in this case, that a violation of section 551(e) is a violation of a right of privacy. Violations of rights of privacy are actionable, but as the third amicus curiae brief points out, there is no indication of any violation of the plaintiff's privacy because there is no indication that Time Warner has released, or allowed anyone to disseminate, any of the plaintiff's personal information in the company's possession. Had Gubala reason to believe the company intends to release any of that information or cannot be trusted to retain it, he would have grounds for obtaining injunctive relief; but he doesn't even argue that there is a *risk* of such leakage.

His strangest argument is that "his personal information [secreted in Time Warner's files] has economic value; the economic value … was incorporated into the value of Plaintiff's transaction with Defendant; and Defendant's unlawful

retention of Plaintiff's personal information … deprived Plaintiff of the full value of his transaction with Defendant. These facts establish the deprivation of the economic value of Plaintiff's personal information." This is gibberish. Time Warner did not take the plaintiff's personal information away from him; he still has it (unless he tore up his birth certificate, credit card information, etc.); he hasn't been deprived of anything; and he isn't asking Time Warner to return his personal information in its files to him; he is asking it to comply with the statute by destroying the information, an act that if committed is unlikely to have the least effect on him. Maybe what he's trying to say is that he fears that Time Warner will give away the information and it will be used to harm him and so in retrospect he will think his two years of subscribing to Time Warner's residential cable services a mistake. But he hasn't said *any* of that.

And finally he neglects to mention that the duty of a cable provider to destroy a subscriber's personal information is qualified by the reference in section 551(e) (the destruction provision) to the preceding subsection of the Cable Act, 551(d), which authorizes disclosure of such information if "necessary to render, or conduct a legitimate business activity related to, a cable service or other service provided by the cable operator to the subscriber … [or if] made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed." And "disclosure of the names and addresses of subscribers to any cable service or other service" is also permitted if the cable operator "has provided the subscriber the opportunity to prohibit or limit such disclosure, and the disclosure does not reveal, directly or indirectly, the extent of any viewing or other use by the subscriber of a cable ser-

vice or other service provided by the cable operator, or the nature of any transaction made by the subscriber over the cable system of the cable operator; or to a government entity as authorized under chapters 119, 121, or 206 of title 18, except that such disclosure shall not include records revealing cable subscriber selection of video programming from a cable operator."

These disclosure provisions presuppose the right and indeed duty of the cable operator to retain rather than destroy subscriber personal information for specified reasons. That right and duty qualify the duty of destruction invoked by Gubala. But in any event the absence of allegation let alone evidence of any concrete injury inflicted or likely to be inflicted on the plaintiff as a consequence of Time Warner's continued retention of his personal information precludes the relief sought and requires that we affirm the district court's judgment dismissing the plaintiff's suit for want of standing.