# Illinois Official Reports

## Appellate Court

---

### *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175

---

| | |
|---|---|
| Appellate Court Caption | KLAUDIA SEKURA, Individually and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. KRISHNA SCHAUMBURG TAN, INC., an Illinois Corporation, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-18-0175 |
| Filed | September 28, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2016-CH-04945; the Hon. David B. Atkins, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Ryan D. Andrews, Roger Perlstadt, and Alexander G. Tievsky, of Edelson PC, of Chicago, for appellant.<br><br>Daniel P. Costello and R. Andrew Smith, of Daniel P. Costello & Associates, LLC, of Chicago, for appellee. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Presiding Justice McBride and Justice Burke concurred in the judgment and opinion. |

¶ 1 In this appeal, plaintiff Klaudia Sekura appeals the dismissal, pursuant to section 2-615 of the Code of the Civil Procedure, of one of her causes of action. 735 ILCS 5/2-615 (West 2016).[1] Although only one cause of action was dismissed, the trial court made an express written finding that there was no just reason for delaying an appeal from its order dismissing count I. Thus, we have jurisdiction to hear this appeal pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).[2]

¶ 2 In count I, plaintiff Sekura alleged that defendant Krishna Schaumburg Tan, Inc., violated the Biometric Information Privacy Act (Act) (740 ILCS 14/1 *et seq.* (West 2016)) by collecting plaintiff's fingerprints without providing the statutorily required disclosure concerning its retention policy and other topics and by disclosing her fingerprints to an out-of-state, third-party vendor. The purpose of the Act is to provide an "individual" with protections against his or her biometric information becoming "compromised" (740 ILCS 14/5(c) (West 2016)), and the Act expressly authorizes a suit by "[a]ny person" who has been "aggrieved by a violation of this Act" (740 ILCS 14/20 (West 2016)).

¶ 3 Initially, the trial court denied defendant's motion to dismiss, finding that under the plain language of the statute plaintiff was a person aggrieved by a violation of the Act. However, after the Second District found in *Rosenbach v. Six Flags Entertainment Corp.*, 2017 IL App (2d) 170317, ¶ 28,[3] that standing under the Act required an "injury or adverse effect" in addition to a violation of the Act, the trial court felt compelled to reverse its prior ruling and to dismiss plaintiff's claim under the Act.[4] Subsequently, a federal district court distinguished *Rosenbach* on the ground that disclosure to a third-party vendor, which is also alleged in our case, constituted such an injury or adverse effect. *Dixon v. Washington & Jane Smith Community-Beverly*, No. 17 C 8033, 2018 WL 2445292, at *12 (N.D. Ill. May 31, 2018).

¶ 4 First, we find that the trial court was initially correct, and that, pursuant to both the plain language of the statute itself and its legislative history and purpose, plaintiff was a person aggrieved by a violation of the Act. Second, we find that, even if *Rosenbach* was correctly decided, it is distinguishable on the facts of this case, as the *Dixon* court similarly found, because disclosure to a third-party vendor is an injury or adverse effect. In addition, the mental anguish that plaintiff alleges in her complaint also constitutes an injury or adverse effect.

---

[1]See *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 23 ("The question presented by a motion to dismiss a complaint pursuant to section 2-615 of the Code is whether the complaint alleges sufficient facts that, if proved, would entitle the plaintiff to relief.").

[2]Rule 304(a) provides, in relevant part: "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

[3]The Illinois Supreme Court granted a petition for leave to appeal in *Rosenbach* on May 30, 2018. *Rosenbach v. Six Flags Entertainment Corp.*, No. 123186 (Ill. May 30, 2018).

[4]"Under the Illinois rule of *stare decisis*, a circuit court must follow the precedent of the appellate court of its district, if such precedent exists; if no such precedent exists, the circuit court must follow the precedent of other districts." *Schramer v. Tiger Athletic Ass'n of Aurora*, 351 Ill. App. 3d 1016, 1020 (2004).

¶ 5       For the following reasons, we reverse the trial court's section 2-615 dismissal of count I and remand for further proceedings.

¶ 6                                    BACKGROUND

¶ 7       In her complaint, filed April 7, 2016, plaintiff alleges that defendant operates a tanning salon in Schaumburg, Illinois, as a franchisee of L.A. Tan Enterprises, Inc. (L.A. Tan). When a customer first purchases services at defendant's tanning salon, he or she is enrolled in L.A. Tan's national membership database, which allows him or her to use his or her membership at any of L.A. Tan's locations. To enroll, customers are required to have their fingerprints scanned. In addition, defendant discloses its customer fingerprint data to an out-of-state third party vendor, namely, SunLync.

¶ 8       Specifically, plaintiff alleges that, in April 2015, she purchased a membership with defendant in order to use its tanning salon and paid defendant on a monthly basis for the membership. When she purchased the membership with defendant, defendant then enrolled plaintiff in L.A. Tan's corporate membership database and "required that she provide it with a scan of her fingerprint." Every time she visited defendant's tanning salon, "she was required to scan her fingerprint before using its services."

¶ 9       Plaintiff alleges (1) that she has never been informed of the specific purposes or length of time for which defendant collected, stored or used her fingerprints, (2) that she has never been informed of any biometric data retention policy developed by defendant or whether defendant will ever permanently delete her fingerprint data, (3) that she has never been provided with nor signed a written release allowing defendant to collect or store her fingerprints, and (4) that she has never been provided with nor signed a written release allowing defendant to disclose her biometric data to SunLync to or any other third party.

¶ 10      Plaintiff further alleges that, in 2013, more than 65% of L.A. Tan's salons were in foreclosure and that defendant's customers have not been advised what would happen to their biometric data if defendant's salon went out of business.[5]

¶ 11      Plaintiff alleges that she becomes emotionally upset and suffers from mental anguish when she thinks about what would happen to her biometric data if defendant went bankrupt or out of business or if defendant's franchisor, L.A. Tan, went bankrupt or out of business, or if defendant shares her biometric data with others. The allegation of mental anguish appears in the "Factual Background" section of plaintiff's complaint. Later, in count I, when plaintiff makes a specific claim about the Act, she states that she "incorporates the foregoing allegations as if fully set forth herein."

¶ 12      Plaintiff alleged three causes of action: (1) violation of the Act, (2) unjust enrichment, resulting from defendant's failure to comply with the Act, and (3) negligence. Only the first count is at issue in this appeal. In this first count, plaintiff alleges that defendant violated the Act because (1) it collected, used, stored and disclosed biometric information without first obtaining the written release that the Act requires; (2) it disclosed biometric information to SunLync, an out-of-state third party vendor; (3) it did not properly inform customers in writing that their biometric information was being collected and stored or of the specific purpose and length of time for which it was being collected and stored, as required by the Act; and (4) it did

_____

[5]At this early stage in the litigation, we take all well-pleaded facts in the complaint as true. *Bogenberger*, 2018 IL 120951, ¶ 23.

not provide a publicly available retention schedule or guidelines for permanently destroying its customers' biometric information, as required by the Act.

¶ 13 Plaintiff filed her suit as a class action alleging that a numerous class of other customers suffered from the same practices.

¶ 14 Instead of filing an answer, defendant moved on July 1, 2016, to dismiss plaintiff's first and second causes of action, for failing to allege sufficient facts to state a cause of action under the Act.

¶ 15 On February 9, 2017, the trial court granted defendant's motion to dismiss count II, the unjust enrichment claim, but denied the motion with respect to count I, the count alleging violations of the Act that is the subject of this appeal.

¶ 16 In its memorandum opinion, the trial court observed that defendant had argued that count I "must be dismissed because the plaintiff is not 'aggrieved' as required by the statute itself." In response to this argument, the trial court found:

> "The language of [the Act] itself in this respect is brief and straightforward: it provides a cause of action for 'any person aggrieved by its violation.' 740 ILCS 14/20 [(West 2016)]. The most natural reading of this language alone is broad, suggesting in context that any person whose biometric data was mishandled in violation of [the Act] has a claim based on such violation. The plaintiff directs the court to a long history of cases which have generally reached a similar conclusion: the Illinois Supreme Court has long held that '[a] person is prejudiced or aggrieved *** when a legal right is invaded by the act complained of.' *Glos v. People*, 259 Ill. 332, 340 (1913); see also *Am. Surety Co. v. Jones*, 384 Ill. 222, 229 (1943) ('We think the words "person who shall think himself aggrieved" mean a person who is immediately aggrieved *** as by the refusal of a license *** not one who is only consequently aggrieved.' [(citing *The King v. The Justices of Middlesex*, 3 B. & A. 983 (1833))]. Courts have further applied this reasoning to privacy-related laws such as the federal Video Privacy Protection Act [cite omitted], which similarly provides a claim for 'any person aggrieved by any act of a person in violation of this section.' See *e.g. Austin-Spearman v. AMC Network Entertainment L.L.C.*, 98 F. Supp. 3d 662 (S.D.N.Y. 2015); see also *In re Facebook Internet Tracking Litig.*, 140 F.Supp. 3d 922 (N.D. Ill. 2015) (applying similar reasoning and allowing suit under other federal privacy laws without dangers)."

¶ 17 The trial court observed:

> "Further, a review of other similar statutes provides further support for the broad intended reach of [the Act]. As the plaintiff points out in its supplemental brief on legislative history, both the Genetic Information Privacy Act, 410 ILCS 513/1, *et seq.*, [(West 2016)] and the AIDS Confidentiality Act, 410 ILCS 305/1, *et seq.*, [(West 2016)] provide for a substantially identical, 'any person aggrieved' right of recovery and have been interpreted as not requiring actual damages be pled. See *e.g. Doe v. Chand*, 335 Ill. App. 3d 809, 822 (5th Dist. 2002). Those statutes were also considered and amended during the same legislative session as enacted [the Act], suggesting that the legislature intended to apply a similar framework."

¶ 18 Thus, on February 9, 2017, the trial court denied defendant's section 2-615 motion to dismiss count I. On July 28, 2017, the trial court denied defendant's motion to certify a question for immediate interlocutory appeal pursuant to Illinois Supreme Court Rule 308(a)

(eff. Jan. 1, 2016). On December 7, 2017, the trial court denied defendant's motion to reconsider its denial for Rule 308(a) certification, but the trial court found that, "[i]n light of the pendency of multiple cases before the Illinois Appellate Court involving the same legal issues and the interests of judicial economy, *** a temporary stay of proceedings" was "appropriate."

¶ 19   On January 5, 2018, defendant filed a motion asking the trial court to reconsider its February 9, 2017, denial in light of the Second District's December 21, 2017, opinion in *Rosenbach*, 2017 IL App (2d) 170317.

¶ 20   On January 16, 2018, the trial court granted defendant's motion to reconsider and reversed its earlier ruling. Since the order is short and it is the order being appealed from, we provide it here in full:

> "This matter coming before the Court on Defendant's Motion to Reconsider and adequate notice having been given, and the Court being duly advised in the premises,
>     IT IS HEREBY ORDERED:
>     1. For the reasons outlined in *Rosenbach v. Six Flags Entertainment Corp.*, No. 2-17-0317 (2d Dist. 2017), Defendant's Motion is GRANTED.
>     2. Count I of Plaintiff's Complaint are [*sic*] hereby dismissed with prejudice and judgment as to Count I entered in Defendant's favor.
>     3. Pursuant to Ill. S. Ct. R. 304(a), the Court finds that there is no just reason for delaying judgment as to Count I nor any just reason for delaying an appeal from this order or the judgment as to Count I.
>     4. The stay shall remain in place as to Count III and the Parties shall report how they wish to proceed within 30 days."

¶ 21   On January 22, 2018, plaintiff filed a notice of appeal stating that she was appealing "the Janauary 16, 2018[,] order entering final judgment on Count One of her complaint." This appeal then followed.

¶ 22                              ANALYSIS

¶ 23   Plaintiff appeals the section 2-615 dismissal of count I of her complaint. For the following reasons, we reverse and remand for further proceedings.

¶ 24                    I. Section 2-615 Motion to Dismiss

¶ 25   "The question presented by a motion to dismiss a complaint pursuant to section 2-615 of the Code is whether the complaint alleges sufficient facts that, if proved, would entitle the plaintiff to relief." *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 23. "Such a motion challenges only the legal sufficiency of the complaint." *Bogenberger*, 2018 IL 120951, ¶ 23.

¶ 26   "The critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Bogenberger*, 2018 IL 120951, ¶ 23. In making this determination, we must take all well-pleaded facts in the complaint as true. *Bogenberger*, 2018 IL 120951, ¶ 23. An appellate court will review *de novo* the trial court's order granting a section 2-615 dismissal. *Bogenberger*, 2018 IL 120951, ¶ 23. *De novo* review means that an appellate court performs

the same analysis that a trial judge would perform. *People v. Begay*, 2018 IL App (1st) 150446, ¶ 34.

¶ 27 The issue in this case rests solely on the complaint, since no discovery has begun and no answer was filed.

¶ 28                                        II. Waiver

¶ 29 As a preliminary matter, defendant argues that the only issue properly before this court is whether a harm or injury, in addition to the violation of the Act itself, is required in order to have standing to sue under the Act. We agree that this issue is the only issue before us.[6]

¶ 30 Defendant argues that we should disregard two issues on the ground that plaintiff waived them by not raising them before the trial court: (1) whether the legislature intended to permit claims for improper collection or mishandling of biometric data and (2) any arguments concerning *Rosenbach*.

¶ 31 First, defendant argues that plaintiff alleges "for the first time on appeal" that defendant mishandled its customers' biometric data. However, plaintiff's complaint repeatedly alleges that defendant collects, stores, uses, and discloses its customers' biometric data in violation of the Act and, in particular, improperly disclosed the data to an out-of-state third-party vendor. Thus, the allegation of "mishandling" data, *i.e.*, handling it in a way that fails to comport with the Act, is squarely in front of us, as we consider whether the allegations of plaintiff's complaint state a cause of action. *Bogenberger*, 2018 IL 120951, ¶ 23 ("The question presented by a motion to dismiss a complaint pursuant to section 2-615 of the Code is whether the complaint alleges sufficient facts that, if proved, would entitle the plaintiff to relief.").

¶ 32 Second, defendant argues that, by not filing a brief in response to defendant's motion to reconsider in light of the *Rosenbach* decision, plaintiff has waived any arguments concerning *Rosenbach*. However, we could not fully consider the issue that defendant concedes is in front of us without considering the *Rosenbach* opinion. Thus, we will conduct our own reading of that opinion to decide whether we find it persuasive. In addition, while arguments raised for the first time in a motion to reconsider in the trial court are usually forfeited on appeal (*Caywood v. Gossett*, 382 Ill. App. 3d 124, 134 (2008)), a winning party is not required to file a response to a reconsideration motion, and defendant does not cite a rule or statutory section that requires one. The law generally does not require a party to file a document that will have no effect, and in the case at bar, the trial court had no choice but to follow the only available appellate court decision. "Under the Illinois rule of *stare decisis*, a circuit court must follow the precedent of the appellate court of its district, if such precedent exists; if no such precedent exists, the circuit court must follow the precedent of other districts." *Schramer*, 351 Ill. App. 3d at 1020.

¶ 33 Lastly, we observe that no discovery has occurred on this issue or on any other issue in the case, that no answer has been filed, and that our standard of review is *de novo* and we owe no deference to the trial court's ruling. Thus, defendant suffers no prejudice from arguments allegedly raised for the first time in plaintiff's opening appellate brief, concerning the purely

---

[6]At oral argument before this court, defendant tried to raise for the first time an argument that its use of plaintiff's fingerprints qualified under a statutory exemption for business transactions. New and novel arguments cannot be raised for the first time at oral argument. Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017) ("Points not argued are waived and shall not be raised *** in oral argument, or on petition for rehearing.").

legal issue that defendant concedes is squarely before us. *Begay*, 2018 IL App (1st) 150446, ¶ 34 (*de novo* review means that an appellate court performs the same analysis that a trial judge would perform).

¶ 34                                    III. Standing

¶ 35    Defendant claims that, without an injury beyond the statutory violation, plaintiff lacks standing to pursue a claim under the Act.

¶ 36    "The purpose of the standing doctrine is to ensure that courts are deciding actual, specific controversies and not abstract ones." *Maschek v. City of Chicago*, 2015 IL App (1st) 150520, ¶ 84 (citing *In re M.I.*, 2013 IL 113776, ¶ 32). For example, "[i]f a person cannot demonstrate that a statute was applied unconstitutionally to himself, then he may not challenge the statute on the ground that ' "it might conceivably be applied unconstitutionally in some hypothetical case" ' against someone else." *Maschek*, 2015 IL App (1st) 150520, ¶ 84 (quoting *In re M.I.*, 2013 IL 113776, ¶ 32, quoting *People v. Wisslead*, 108 Ill. 2d 389, 397 (1985)).

¶ 37    "Under Illinois law, lack of standing is an affirmative defense, which is the defendant's burden to plead and prove." *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010).

¶ 38                              IV. Statutory Interpretation

¶ 39    This appeal requires us to interpret the words of the Act and decide what the Act requires.

¶ 40    "With statutory construction, our primary goal is to ascertain the legislat[ors'] intent, and the best indication of their intent is the plain and ordinary meaning of the words they chose to use." *People v. Miles*, 2017 IL App (1st) 132719, ¶ 25; *State ex rel. Pusateri v. Peoples Gas Light & Coke Co.*, 2014 IL 116844, ¶ 8 (citing *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23).

¶ 41    "When a statute does not define its own terms, a reviewing court may use a dictionary to ascertain the plain and ordinary meaning of those terms." *Maschek*, 2015 IL App (1st) 150520, ¶ 56 (citing *People v. McChriston*, 2014 IL 115310, ¶ 15, and *People v. Bingham*, 2014 IL 115964, ¶ 55); see also *People v. Chapman*, 2012 IL 111896, ¶ 24 ("When a statute contains a term that is not specifically defined, it is entirely appropriate to look to the dictionary to ascertain the plain and ordinary meaning of the term."). "[C]ourts and lawyers frequently rely on Black's Law Dictionary to define terms ***." *Maschek*, 2015 IL App (1st) 150520, ¶ 57 (citing *McChriston*, 2014 IL 115310, ¶ 17).

¶ 42    "When interpreting a statute, we do not read a portion of it in isolation; instead, we read it in its entirety, keeping in mind the subject it addresses and the drafters' apparent objective in enacting it." *Miles*, 2017 IL App (1st) 132719, ¶ 25; *People v. Chatman*, 2016 IL App (1st) 152395, ¶ 30. When considering the drafters' objective, we examine the problems that the legislature intended to remedy with the law and the consequences of construing it one way or the other. *People v. Almond*, 2015 IL 113817, ¶ 34 (we "consider the reason for the law and the problems intended to be remedied"); *People v. Eppinger*, 2013 IL 114121, ¶ 21 (legislative intent may be ascertained by considering "the statute in its entirety, its nature and object, and the consequences of construing it one way or the other").

¶ 43    "In addition, whenever possible, every word, clause, and sentence is to be given reasonable meaning and shall not be treated as superfluous or rendered void." *Mulry v. Berrios*, 2017 IL App (1st) 152563, ¶ 9; *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 68 ("one of the

principles of statutory interpretation is that we should give effect to every word and section of the statute"); *Speedy Gonzalez Landscaping, Inc. v. O.C.A. Construction, Inc.*, 385 Ill. App. 3d 699, 701 (2008) (" 'If possible, courts must give effect to every word, clause, and sentence and may not read a statute so as to render any part, inoperative, superfluous, or insignificant.' " (quoting *Newland v. Budget Rent-A-Car Systems, Inc.*, 319 Ill. App. 3d 453, 456 (2001)).

¶ 44    Where the language is plain and unambiguous, we apply the statute without resort to further aids of statutory interpretation. *In re Lance H.*, 2014 IL 114899, ¶ 11; *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003); *Maschek*, 2015 IL App (1st) 150520, ¶ 44 ("If the statutory language is clear, we must apply it, without resort to any aids of statutory construction."). "If, and only if, the statutory language is ambiguous, we may look to other sources to ascertain the legislature's intent." *Maschek*, 2015 IL App (1st) 150520, ¶ 44 (citing *Krohe*, 204 Ill. 2d at 395). "These other sources include primarily the statute's legislative history and debates." *Maschek*, 2015 IL App (1st) 150520, ¶ 44 (citing *Krohe*, 204 Ill. 2d at 398). "When interpreting an ambiguous phrase in a statute, our supreme court looks especially to the remarks of a bill's sponsor." *Maschek*, 2015 IL App (1st) 150520, ¶ 62 (citing *Krohe*, 204 Ill. 2d at 398); see also *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 68 (giving more weight to the remarks of "the chief sponsor of the legislation"); *Julie Q. v. Department of Children & Family Services*, 2013 IL 113783, ¶ 31 (quoting the sponsor's remarks when interpreting a statute). "The remarks made immediately prior to passage are particularly important." *Maschek*, 2015 IL App (1st) 150520, ¶ 62 (citing *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶¶ 51-53 (quoting the sponsors' remarks in order to interpret a statute and noting that, following these remarks, the bill passed)).

¶ 45    "[W]hile we may turn to other codes, we should only do so when the codes share similar goals and related subjects." *Maschek*, 2015 IL App (1st) 150520, ¶ 71 (citing *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 37). A statute should be " 'construed in conjunction with other statutes touching on the same or related subjects' " " 'considering the reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained.' " *Maschek*, 2015 IL App (1st) 150520, ¶ 71 (quoting *Carter*, 2012 IL 113204, ¶ 37); *People v. Steppan*, 105 Ill. 2d 310, 321 (1985) ("Because the statutes under consideration have different goals and purposes," they need not be compared.); *People v. Williams*, 376 Ill. App. 3d 875, 892 (2007) (considering "similar statutes").

¶ 46    Like section 2-615 dismissals, questions of statutory interpretation are also reviewed *de novo*. *People v. Schlosser*, 2017 IL App (1st) 150355, ¶ 28; *Chatman*, 2016 IL App (1st) 152395, ¶ 23. As we observed above, "*[d]e novo* review means that we will perform the same analysis a trial court would perform." *Trzop v. Hudson*, 2015 IL App (1st) 150419, ¶ 63.

¶ 47                                              V. The Act

¶ 48    At issue in this appeal is the meaning of the word "aggrieved" as used in the Act. The word "aggrieved" appears in section 20 of the Act. Since section 20 is the section primarily at issue in this appeal, we provide it below in full:

> "Right of Action. Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party. A prevailing party may recover for each violation:
>
>> (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;

- 8 -

(2) against a private party that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;

(3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and

(4) other relief, including an injunction, as the State or federal court may deem appropriate." 740 ILCS 14/20 (West 2016).

## A. Plain Language

The plain language of the Act states that any person "aggrieved by a violation of this Act" may sue. 740 ILCS 14/20 (West 2016). It does *not* state that a person aggrieved by a violation of this Act—*plus* some additional harm—may sue. If the drafters had intended to limit the pool of plaintiffs to those plaintiffs who had been both aggrieved by a violation of the Act *and* aggrieved by some additional harm or injury, they could have easily stated that. However, they chose to state only "a violation of this Act." 740 ILCS 14/20 (West 2016). Thus, the plain language of the Act supports plaintiff's right to sue. See, *e.g.*, *Miles*, 2017 IL App (1st) 132719, ¶ 25 ("the best indication" of the drafters' intent is "the plain and ordinary meaning of the words they chose to use"); *supra* ¶ 40.

The Act, quoted above, also provides for either "liquidated damages" or "actual damages," thereby establishing that actual damages are not required to obtain relief under the Act. 740 ILCS 14/20 (West 2016). Thus, the overall structure of the Act also supports plaintiff's right to sue. See, *e.g.*, *Miles*, 2017 IL App (1st) 132719, ¶ 25 (when interpreting a statute, "we read it in its entirety"); *supra* ¶ 42.

In Black's Law Dictionary, the first definition of "aggrieved" is "having legal rights that are adversely affected." Black's Law Dictionary 73 (8th ed. 2004); see, *e.g.*, *Maschek*, 2015 IL App (1st) 150520, ¶ 57 (courts "frequently rely on Black's Law Dictionary"); *supra* ¶ 41. In other words, the Act provides plaintiff with "legal rights" that she alleges were "adversely affected" by the Act's violation. Defendant quotes this definition in its brief to this court, and we agree that it is persuasive. But applying the words of this definition to the facts of this case supports plaintiff's right to sue.

Similarly, while the first definition in Dictionary.com is "wronged," the second definition, which is specifically marked "Law," is "deprived of legal rights." http://www.dictionary.com/ browse/aggrieved (last visited Sept. 27, 2018) [https://perma.cc/UBX9-JG7S]; see, *e.g.*, *Chapman*, 2012 IL 111896, ¶ 25 (consulting a dictionary to define a statutory term); *Maschek*, 2015 IL App (1st) 150520, ¶ 56 ("a reviewing court may use a dictionary to ascertain the plain" meaning of a word); *supra* ¶ 41. Plaintiff alleges that the Act provided her with "legal rights," and that she was "deprived of [these] legal rights" by defendant's violation of the Act. Again, applying the words of this definition supports plaintiff's right to sue.

Defendant argues that interpreting the Act to require only a violation for standing renders the word "aggrieved" superfluous. *E.g.*, *Mulry*, 2017 IL App (1st) 152563, ¶ 9 (no word shall "be treated as superfluous"); *supra* ¶ 43. Defendant argues that the use of the word "aggrieved" shows that the Act requires something more than just a violation. However, defendant's interpretation requires a tortured reading of the following sentence: "[a]ny person aggrieved by a violation of this Act shall have a right of action." 740 ILCS 14/20 (West 2016). The word "aggrieved" is what connects "person" to the "Act" and, thus, it is not superfluous. In other

words, it cannot be that any person, who finds a violation of the Act, may sue. Instead, it must be a person whose privacy rights under the Act were "aggrieved by" the violation. Thus, we are not persuaded by defendant's argument that the word "aggrieved" is superfluous unless we require additional harm.

¶ 55 Defendant argues that "the status of 'a person aggrieved' is separate from the 'violation' of the statute." Defendant argues that section 20 "separates a violation from the status of a subject being a 'person aggrieved' by that violation." Again, defendant's argument requires a tortured reading of the following, fairly simple sentence: "Any person aggrieved by a violation of this Act shall have a right of action." 740 ILCS 14/20 (West 2016). The words "aggrieved by" *connect* "person" to the "violation," rather than separate them. This can be easily found if you try to remove the words "aggrieved by" from the sentence. If you removed the words "aggrieved by," you would have to replace them with something. You could not state: "Any person *** a violation of this Act shall have a right of action." 740 ILCS 14/20 (West 2016). That line would make no sense. You would have to replace the words "aggrieved by" with another phrase connecting "person" to "violation," such as "subjected to." Thus, the words "aggrieved by" are neither superfluous nor a divider.

¶ 56                                 B. Legislative Purpose and History

¶ 57 If the words of a statute are ambiguous, and only if they are ambiguous, may we turn to other aides, such as legislative history. *E.g.*, *Maschek*, 2015 IL App (1st) 150520, ¶ 44; see also *supra* ¶ 44. While we do not find that the words were ambiguous, we do find that the legislative purpose and history further supports our conclusion that plaintiff has standing to sue under the Act.

¶ 58 The legislative purpose is easy to discern because the legislators provided a section in the Act entitled: "Legislative findings; intent." 740 ILCS 14/5 (West 2016). In this section, the drafters explained that "[a]n overwhelming majority of the public" are apprehensive about the use of biometric identifiers and, as a result, they are "deterred from partaking in biometric identifier-facilitated transactions." 740 ILCS 14/5(d) (West 2016). Acknowledging the reasonableness of these fears, the drafters found that "[t]he full ramifications of biometric technology are not fully known." 740 ILCS 14/5(f) (West 2016). A biometric identifier, "once compromised," leaves an individual with no replacement options and, thus, "no recourse." 740 ILCS 14/5(c) (West 2016). Thus, the drafters concluded that the public would "be served by regulating the collection, use, safeguarding, handling, storage, retention and destruction of biometric identifiers and information." 740 ILCS 14/5(g) (West 2016). Putting these regulations in place would further the selection by "[m]ajor national corporations" of "the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies." 740 ILCS 14/5(b) (West 2016).

¶ 59 Based on the above findings, defendant argues that the Act provides redress only once a person's biometric data has actually been compromised and that a person may then sue for the "resulting harm." However, the whole purpose of the Act is to prevent any harm from occurring in the first place, thereby reassuring the public, who will then be willing to participate in this new technology. Waiting until the harm has already occurred is too late because, as the drafters found, once a person's biometric identifiers have been compromised, there is simply "no recourse" for prevention. 740 ILCS 14/5(c) (West 2016). A person cannot

obtain new DNA or new fingerprints or new eyeballs for iris recognition, at least not easily or not at this time. Replacing a biometric identifier is not like replacing a lost key or a misplaced identification card or a stolen access code. The Act's goal is to prevent irretrievable harm from happening and to put in place a process and rules to reassure an otherwise skittish public. Forcing a member of the public to wait until after an irretrievable harm has already occurred in order to sue would confound the very purpose of the Act. Thus, the stated findings of the drafters do not support defendant's claims and argument.

¶ 60     In addition, the trial court ordered the parties on December 8, 2016, to file supplemental briefs specifically "concerning the legislative history" of the Act, and both parties complied. Thus, the issue of legislative history has been thoroughly briefed and argued on the record before us.

¶ 61     In its supplemental brief to the trial court, defendant observed that "the legislative history is notably silent on the intent and purpose of Section 20," which provides the right to sue and contains the disputed "aggrieved by" language. Similarly, in her supplemental brief to the trial court, plaintiff agreed that section 20 "received little to no comment in the floor debates on the bill."

¶ 62     In their supplemental briefs, both parties paid particular attention to the remarks of Representative Kathleen Ryg, the House sponsor, immediately before the House's passage of the Act. *E.g.*, *Maschek*, 2015 IL App (1st) 150520, ¶ 62 (a reviewing court pays particular attention to the remarks of a bill's sponsor and to the remarks immediately prior to passage); see also *supra* ¶ 44.

¶ 63     Representative Ryg explained that the Act "sets collection and retention standards while prohibiting the sale of biometric information." 95th Ill. Gen. Assem., House Proceedings, May 30, 2008, at 249 (statement of Representative Ryg). She explained the impetus for the Act as follows:

"This Bill is especially important because one of the companies that has been piloted in Illinois, Pay By Touch, is the largest fingerprint scan system in Illinois and they have recently filed for bankruptcy and wholly stopped providing verification services in March of 2008. This pullout leaves thousands of customers from Albertson's, Cub Foods, Farm Fresh, Jewel Osco, Shell, and Sunflower Market, wondering what will become of their biometric and financial data. The California Bankruptcy Court recently approved the sale of their Pay By Touch database. So, we are in very serious need of protections for the citizens of Illinois when it comes to biometric information. I know of no opposition to the legislation and I'll attempt to answer any questions." 95th Ill. Gen. Assem., House Proceedings, May 30, 2008, at 249 (statement of Representative Ryg).

There were no questions and no discussion. The bill proceeded immediately to a vote and passed the House. It was subsequently passed by the Senate on July 10, 2008, and signed into law by the governor on October 3, 2008.

¶ 64     Representative Ryg's remarks establish that the primary impetus behind the bill was to alleviate the fears of "thousands of customers *** wondering what will become of their biometric and financial data" and to provide them with protections. 95th Ill. Gen. Assem., House Proceedings, May 30, 2008, at 249 (statement of Representative Ryg). Similarly, plaintiff's complaint alleges that plaintiff "experiences mental anguish and injury when thinking about what would happen to her biometric data" if defendant went bankrupt or shared

- 11 -

her biometric data. Thus, plaintiff's allegations, which we must accept as true at this early stage of the litigation, are similar to the fears that the Act's sponsor sought to allay with the Act's passage. See *Bogenberger*, 2018 IL 120951, ¶ 23 (when determining whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to state a cause of action, we must take all well-pleaded facts in the complaint as true).

¶ 65     Defendant argues that Representative Ryg's remarks establish that the drafters' primary concern was the sale of biometric data and that, since plaintiff has not alleged "the use of biometric data by unintended parties," she lacks the type of injury needed for suit. Although plaintiff has not alleged a sale, she has alleged that defendant disclosed its customers' biometric data to a third-party out-of-state vendor. Thus, even if we were persuaded by defendant's argument, we must find that plaintiff's allegations of disclosure, which defendant has yet to deny, satisfied that concern.

¶ 66                                    C. Other Statutes

¶ 67     The parties cite other statutes that use the term "aggrieved." However, most of these statutes do not share similar goals or related subjects. "[W]hile we may turn to other codes, we should only do so when the codes share similar goals and related subjects." *Maschek*, 2015 IL App (1st) 150520, ¶ 71 (a statute should be " 'construed in conjunction with other statutes touching on the same or related subjects' " " 'considering the reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained' " (quoting *Carter*, 2012 IL 113204, ¶ 37)); *Steppan*, 105 Ill. 2d at 321 ("Because the statutes under consideration have different goals and purposes," they need not be compared); *Williams*, 376 Ill. App. 3d at 892 (considering "similar statutes").

¶ 68     Of the various statutes, the closest one for comparison's sake is the AIDS Confidentiality Act (410 ILCS 305/1 *et seq.* (West 2016)). Its "Right of Action" section (410 ILCS 305/13 (West 2016)) is virtually identical to the "Right of Action" section, or section 20, in the Act at issue (740 ILCS 14/20 (West 2016)). Section 13 in the AIDS Confidentiality Act provides in full:

> "Any person aggrieved by a violation of this Act or of a regulation promulgated hereunder shall have a right of action in the circuit court and may recover for each violation:
>
>      (1) Against any person who negligently violates a provision of this Act or the regulations promulgated hereunder, liquidated damages of $2,000 or actual damages, whichever is greater.
>
>      (2) Against any person who intentionally or recklessly violates a provision of this Act or the regulations promulgated hereunder, liquidated damages of $10,000 or actual damages, whichever is greater.
>
>      (3) Reasonable attorney fees.
>
>      (4) Such other relief, including an injunction, as the court may deem appropriate."
> 410 ILCS 305/13 (West 2016).

¶ 69     In comparing section 13 of the AIDS Confidentiality Act with section 20 (quoted *supra* ¶ 48), we observe that the two sections are quite similar. Both sections provide a right of action to "[a]ny person aggrieved by a violation of this Act." 410 ILCS 305/13 (West 2016); 740

ILCS 14/20 (West 2016). Both sections provide recovery against a person who "negligently violates a provision of this Act" or "intentionally or recklessly violates a provision of this Act." 410 ILCS 305/13(1), (2) (West 2016); 740 ILCS 14/20(1), (2) (West 2016). Both provide for liquidated or actual damages, "whichever is greater." 410 ILCS 305/13(1), (2) (West 2016); 740 ILCS 14/20(1), (2) (West 2016). Both sections provide for reasonable attorney fees, as well as "other relief, including an injunction." 410 ILCS 305/13(3), (4) (West 2016); 740 ILCS 14/20(3), (4) (West 2016).

¶ 70    In addition, the two statutes have similar purposes. Like the Act at issue in our case, the AIDS Confidentiality Act also has a section stating its purpose and legislative findings. 410 ILCS 305/2 (West 2016). The purpose of the AIDS Confidentiality Act is to relieve the fears of people about being tested for AIDS and to protect against unauthorized disclosure (410 ILCS 305/2 (West 2016) (members of the public "fear that test results *** will be disclosed without their intent")); similarly, the purpose of the Act at issue is to relieve the fears of people in using and relying on new technology and to protect against unauthorized disclosure (740 ILCS 14/5 (West 2016); *supra* ¶¶ 58-59). In both situations, disclosure can create irreparable harm.

¶ 71    Faced with a similar "right of action" section, the appellate court found that, in a suit under the AIDS Confidentiality Act, a person could recover liquidated damages without proof of actual damages. *Doe v. Chand*, 335 Ill. App. 3d 809, 822 (2002). In the 2 to 1 decision, all three justices agreed on that point. The only point of difference was, *if* a plaintiff claimed actual damages, whether those actual damages had to be shown by evidence such as "medical bills, lost wages, or other out-of-pocket expenses" (*Chand*, 335 Ill. App. 3d at 822) or whether actual damages could include compensation "for the mental anguish" caused by the unauthorized disclosures (*Chand*, 335 Ill. App. 3d at 823 (Kuehn, J., concurring in part and dissenting in part)). However, the panel unanimously agreed that a person could recover liquidated damages without proof of actual damages. *Chand*, 335 Ill. App. 3d at 824 (Kuehn, J., concurring in part and dissenting in part) ("I concur in all other aspects of the majority opinion.").

¶ 72    Thus, our review of a statute that is similar in purpose and wording to the Act at issue further supports our finding that plaintiff may sue for a violation of the Act without proving additional harm.

¶ 73                                VI. *Rosenbach*

¶ 74    To date, the only Illinois state appellate court panel to discuss the meaning of "aggrieved by" in section 20 of the Act is the Second District case of *Rosenbach*. In *Rosenbach*, plaintiff alleged that, when her minor son purchased a season pass for a Great America theme park, defendant Six Flags Entertainment Corporation fingerprinted him without obtaining any consent or disclosing its plan for the collection, storage, use or destruction of its customers' biometric identifiers. *Rosenbach*, 2017 IL App (2d) 170317, ¶ 1. Plaintiff alleged that, if she had known, she would not have allowed her son to purchase the pass. *Rosenbach*, 2017 IL App (2d) 170317, ¶ 1. The trial court in *Rosenbach* denied defendant's motion to dismiss but then certified questions for review that asked whether a person aggrieved by a violation of the Act must allege an injury or harm in addition to the violation of the Act. *Rosenbach*, 2017 IL App (2d) 170317, ¶ 15. The *Rosenbach* court found that it had to find that an additional harm was required; otherwise the word "aggrieved" in the Act would be rendered superfluous. *Rosenbach*, 2017 IL App (2d) 170317, ¶ 23. We already examined this argument above (*supra* ¶¶ 54-55) and found it unpersuasive.

¶ 75    The *Rosenbach* court concluded: "If a person alleges only a technical violation of the Act without alleging any injury or adverse effect, then he or she is not aggrieved and may not recover under any of the provisions in section 20. We note, however, that the injury or adverse effect need not be pecuniary." *Rosenbach*, 2017 IL App (2d) 170317, ¶ 28; see *Chand*, 335 Ill. App. 3d at 823 (Kuehn, J., concurring in part and dissenting in part) (actual damages may include compensation "for the mental anguish" caused by unauthorized disclosures).

¶ 76    Even if we were persuaded by *Rosenbach*'s finding, we would still conclude that plaintiff's allegations in the case at bar were sufficient to support a cause of action. Unlike the plaintiff in *Rosenbach*, plaintiff in our case did allege an "injury or adverse effect," as *Rosenbach* required. *Rosenbach*, 2017 IL App (2d) 170317, ¶ 28. Specifically, she alleged (1) an injury to her legal right to privacy of her own biometric information by the disclosure of this information to an out-of-state third party vendor and (2) mental anguish.

¶ 77    As to the first, the Act safeguards an individual's right to privacy with respect to biometric information, by prohibiting private entities from obtaining such information without a written release from the subject. 740 ILCS 14/15(b) (West 2016). As we discuss in further detail below (*infra* ¶ 79), a federal district court found both that the Act "create[d] a legal right to privacy in personal biometric data" (*Dixon*, 2018 WL 2445292, at *9) and that the disclosure to a third-party out-of-state vendor constituted an injury to this right and thereby conferred standing, even under *Rosenbach* (*Dixon*, 2018 WL 2445292, at *10, 12). To be clear, we find that the statutory violations to plaintiff's privacy constituted harm even without disclosure, but the disclosure in the case at bar makes it distinguishable from *Rosenbach*.

¶ 78    As to the second, plaintiff specifically alleged mental anguish in her complaint:

"As a result of [defendant]'s conduct, [plaintiff] has suffered emotional upset, mental anguish, and mental injury. For example, [plaintiff] experiences mental anguish and injury when thinking about what would happen to her biometric data if [defendant] goes bankrupt, if [defendant]'s franchisor, L.A. Tan Enterprises, Inc., goes bankrupt, whether [defendant] will ever delete her biometric data, and whether (and to whom) [defendant] shares her biometric data."

*Cf. Chand*, 335 Ill. App. 3d at 823 (Kuehn, J., concurring in part and dissenting in part) (actual damages may include "mental anguish"); *Dixon*, 2018 WL 2445292, at *10 (since the court found that harm to the plaintiff's "right to privacy in her biometric data" constituted a "concrete injury," it did not "address" whether her claim of mental anguish also constituted an additional injury).[7] Thus, even if we were persuaded by *Rosenbach*, we would have to find that it is distinguishable from the facts of the instant case, and therefore it does not control the outcome here.

---

[7]In *Gubala v. Time Warner Cable*, 846 F.3d 909, 913 (7th Cir. 2017), Justice Posner observed about the plaintiff in front of him: "Maybe what he's trying to say is that he fears [the defendant] will give away the [plaintiff's personal] information and it will be used to harm him ***. But he hasn't said any of that." (Emphasis omitted.) As a result, the Seventh Circuit found that the plaintiff failed to allege an article III injury needed to sue under the federal Cable Communications Policy Act (47 U.S.C. § 551(e) (2012)). *Gubala*, 846 F.3d at 910, 913. By contrast, in the case at bar, plaintiff has alleged her fears and resulting mental anguish.

- 14 -

¶ 79        After *Rosenbach* was decided, an Illinois federal district court distinguished it, for virtually the same reasons that we do here.[8] In *Dixon*, 2018 WL 2445292, at *1, the plaintiff alleged that her employer required her to clock in and out of work by scanning her fingerprints into a biometric timekeeping device. As in the case at bar, the defendant disclosed her biometric identifiers to an out-of-state third party vendor without her consent or knowledge. *Dixon*, 2018 WL 2445292, at *12. Before considering whether plaintiff had standing under the Act, the federal district court first considered whether she had alleged "an injury in fact sufficient for [federal] Article III standing." *Dixon*, 2018 WL 2445292, at *8. After examining the Act's stated legislative findings and substantive provisions, the federal court concluded that the Illinois legislature intended "to create a legal right to privacy in personal biometric data." *Dixon*, 2018 WL 2445292, at *9.

¶ 80        Turning to the case before it, the federal court observed that the plaintiff had "alleged that [defendant] disclosed her fingerprint data to [the third-party vendor] without her knowledge" and, thus, "violated her right to privacy in her biometric information—the very right that the drafters of [the Act] sought to protect." *Dixon*, 2018 WL 2445292, at *9. The federal court found that "this alleged violation of the right to privacy in and control over one's biometric data, despite being an intangible injury, is sufficiently concrete to constitute an injury in fact that supports [federal] Article III standing." *Dixon*, 2018 WL 2445292, at *10. The federal court then found that *Rosenbach* was distinguishable for the same reason, namely, that the plaintiff in the case before it, unlike the *Rosenbach* plaintiff, had alleged an actual injury, specifically "an injury to a privacy right." *Dixon*, 2018 WL 2445292, at *12. The federal court explained that, since "obtaining or disclosing a person's biometric data without her consent or knowledge constitutes an actual and concrete injury because it infringes on the right to privacy in that data, this case is distinguishable from *Rosenbach*." *Dixon*, 2018 WL 2445292, at *12. In this regard as well, plaintiff's claim here is also distinguishable.

¶ 81        The federal court also found that other cases cited by the defendant were distinguishable for this reason as well. The federal court stated that the plaintiff had "alleged what the plaintiffs in *McCollough* [*v. Smarte Carte, Inc.*, No. 16 C 03777, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016)], *Vigil* [*v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499 (S.D.N.Y. 2017)[9]] and *Gubala*[, 846 F.3d at 913] did not. Specifically, she has alleged that [the defendant] disclosed her fingerprint scan to [a third-party out-of-state vendor] without informing her or obtaining her consent to do so." *Dixon*, 2018 WL 2445292, *10. In the case at bar, defendant

---

[8]While decisions from lower federal courts are not binding, we may consider whether we find persuasive the logic and reasoning expressed therein. *Rosenbach*, 2017 IL App (2d) 170317, ¶ 21. However, when reading a federal decision, we must keep in mind the differences, such as that federal courts are subject to article III in the federal constitution, while state courts are not. "Under Illinois law, lack of standing is an affirmative defense, which is the defendant's burden to plead and prove." *Lebron*, 237 Ill. 2d at 252. By contrast, in federal court, the injury conferring standing may also be needed to confer article III subject-matter jurisdiction, and without it, a federal court may have no power to act. *E.g.*, *Santana v. Take-Two Interactive Software, Inc.*, 717 Fed. App'x 12, 17-18 (2d Cir. 2017).

[9]*Vigil* was affirmed in part, vacated in part, and remanded by summary order in *Santana*, 717 Fed. App'x. at 18. The Second Circuit vacated the part where the district court held that the plaintiffs lacked standing under the Act. *Santana*, 717 Fed. App'x. at 18. However, the Second Circuit vacated that part only because, without an article III injury, the district court lacked the subject-matter jurisdiction needed to consider any substantive issues. *Santana*, 717 Fed. App'x at 17.

also cites *McCollough* and *Vigil*, and we do not find them persuasive for the same reason as the *Dixon* court.

¶ 82                                                     CONCLUSION

¶ 83     For the foregoing reasons, we reverse the trial court's section 2-615 dismissal of count I of plaintiff's complaint and remand for further proceedings consistent with this opinion.

¶ 84     First, we find that the trial court was initially correct and that, pursuant to both the plain language of the statute itself and its legislative history and purpose, the Act does not require a harm in addition to a violation of the Act in order to file suit. The Act states, very simply, that any person "aggrieved by a violation of this Act" may sue. 740 ILCS 14/20 (West 2016). It does *not* state that a person aggrieved by a violation of this Act—*plus* some additional harm—may sue.

¶ 85     Second, we find that, even if *Rosenbach* was correctly decided and an additional "injury or adverse effect" is required, *Rosenbach* is distinguishable from this case, in the following two ways. *Rosenbach*, 2017 IL App (2d) 170317, ¶ 28 (requiring an "injury or adverse effect," in addition to violation of the Act). First, as the federal district court similarly found, disclosure to an out-of-state third-party vendor constitutes an injury or adverse effect, and plaintiff in the instant case alleged such a disclosure, while the *Rosenbach* plaintiff did not. *Dixon*, 2018 WL 2445292, *10, 12. Second, the mental anguish that plaintiff alleges in her complaint also constitutes an injury or adverse effect. *E.g.*, *Chand*, 335 Ill. App. 3d at 823 (Kuehn, J., concurring in part and dissenting in part) (actual damages may include "mental anguish"). For these reasons, we must reverse and remand.

¶ 86     "We note, in closing, that the legislature has broad latitude and discretion in drawing statutory classifications to benefit the general welfare. [Citation.] The responsibility for the wisdom of legislation rests with the legislature, and courts may not rewrite statutes to make them consistent with the court's idea of orderliness or public policy. [Citation.] Whether a windfall results in this circumstance—and it is far from clear that it does ***—is not for us to decide. Our function is to ascertain the intent of the legislature as expressed in the language and framework of its statutory enactments. If this interpretation is *not* what the legislature intended, we urge legislators to revisit this issue and make their intent manifest." (Emphasis in original.) *Citibank, N.A. v. Illinois Department of Revenue*, 2017 IL 121634, ¶ 70.

¶ 87     Reversed and remanded.